23725. STROTHER v. MUTUAL BENEFIT HEALTH AND ACCIDENT ASSOCIATION.

DECIDED SEPTEMBER 19, 1934. REHEARING DENIED SEPTEMBER 29, 1934.

*M. H. Collier, Cotterill, Hopkins, Bryan & Ward,* for plaintiff.
*Little, Powell, Reid & Goldstein, James H. Therrell, Frederic T. Solomon,* for defendant.

JENKINS, P. J. 1. While no company can lawfully transact any business of insurance in this State without first procuring for itself a license therefor from the insurance commissioner (Civil Code of 1910, § 2414), while no person can lawfully act as agent in this State of any insurance company until the company has received the prescribed licenses to transact business both for itself and its agents (Civil Code, § 2448), and any person who acts as agent for such a company "without such company having first received a certificate of authority [or license] from the insurance commissioner of this State as required by law is guilty of a misdemeanor (Civil Code, § 2444), and while, under § 2443, any person who acts

in this State for an insurance company in adjusting for it any loss is to be held to be an agent of the company, it is nevertheless true that a contract made in this State on behalf of an insurance company by one of its adjusting agents is not to be declared null and void because of the failure of the company to previously pay the three-dollar license fee for such agent, as required by § 2448; since it is a general rule that the contracts of an agent required to be licensed are to be upheld, even in the absence of a previous payment of the license fee, where the license has been imposed merely for the purpose of raising revenue, and not for the purpose of protecting the public from acts mala in se, acts detrimental to good morals, or other improper acts by incompetent or irresponsible persons. *Toole* v. *Wiregrass Development Co.*, 142 *Ga.* 57 (82 S. E. 514); *Davis* v. *Boyd Co.*, 143 *Ga.* 600 (85 S. E. 752); *McLamb* v. *Phillips*, 34 *Ga. App.* 210 (129 S. E. 570). In the instant case nothing is required as to adjusters of insurance companies more than the payment of the tax itself; no provision being made as to their qualifications or good character or as to their giving bond, or for their removal for malfeasance, as the statute provided in the case of *Padgett* v. *Silver Lake Park Cor.*, 168 *Ga.* 759 (149 S. E. 180). Ga. L. 1925, pp. 325, 326, 332, as amended, Ga. L. 1927, p. 307. The rule might be different were the agent involved in the instant case a soliciting agent, since under the provisions of the act of 1912 (Ga. L. 1912, pp. 119, 124; Michie's Code, § 2448 (2)), "all agents soliciting insurance in the State of Georgia shall, before procuring the license from the department of insurance, make application to the commissioner and before the said commissioner shall issue such license, he shall satisfy himself that such agent is authorized by some reputable insurance company to do business in this State, and the commissioner shall be advised and convinced as to the moral character and integrity of such applicant for license," and "the license of any soliciting agent may be revoked at any time by the insurance commissioner in his discretion." The court therefore did not err in directing a verdict for the defendant insurance company, under the written release procured by the adjuster of the company, notwithstanding the plaintiff's contention that the contract of release was void.

2. In order to avoid a release of an insurance company under a contract induced by a physician or surgeon as its agent, the state-

ments of the physician or surgeon must amount to more than mere expressions of professional opinion, belief, or prophecy as to the future effects and probable duration of the injury to the insured, unless such expressions amount to statements of fact whose error is known or should have been known by the maker under medical or surgical science. It is not sufficient to show merely that the expression of opinion has been proved to be incorrect. Nason v. Chicago &c. Ry. Co., 140 Iowa, 533 (118 N. W. 751); Chicago &c. Ry. Co. v. Wilcox, 116 Fed. 913; State ex. rel. Fourth Nat. Bank v. Johnson, 103 Wis. 591 (79 N. W. 1081, 51 L. R. A. 46, 49). In the instant case, even if the general exception by the plaintiff to the direction of the verdict in favor of the insurance company could be taken as sufficient to raise the particular question that the contract of release was void because it was procured by fraud of the company, in that the physician attending the insured was also a medical examiner for the company, that the physician had informed the insured that in his opinion the insured was improving from his attack of tuberculosis and by certain stated dates would be able to leave his bed and do light work, and that the insured signed the release in reliance upon such statements, this contention of the plaintiff is without merit. The evidence indicates that neither the beginning nor the continuance of treatment of the insured had any connection with any business for which the physician was either expressly or impliedly employed by the company; that he was merely one of a number of local doctors who on special occasions and for fees paid in each separate case would make medical examinations; that when he began to treat the insured and first made the statement of opinion complained of, his treatment and statement were merely as the physician of the insured, without relation to the company and without his knowledge that the plaintiff had insurance with the company. It further appears from the evidence that so far as the statement that the patient was improving might be considered a statement of fact, the statement was true, in that the patient was improving and did improve under the physician's treatment. As to the estimated duration of the illness and the time of recovery, the statements amounted to no more than a professional opinion, which could not be accounted as constituting fraud, regardless of whether they proved incorrect, even if the insurance company could be held liable as principal for such state

ments of the physician, on the theory that, although he might not have been the agent of the company when the statements were made, the company by ratification made itself responsible through its acceptance of the benefit from the statements in procuring the release. See Bertha *v.* Regal Motor Car Co., 180 Mich. 51 (146 N. W. 389).

*Judgment affirmed. Stephens and Sutton, JJ., concur.*

### ON MOTION FOR REHEARING.

JENKINS, P. J. Counsel for the movant state that this court has overlooked section 4 of the act of August 17, 1912, codified as section 2415 (a), Park's Code (Michie's Code, § 2415 (1)), which provides that "it shall be the duty of the insurance commissioner to issue license to the insurance companies and agents when they shall have complied with the requirements of the laws of this State and the rules and regulations prescribed by the commissioner so as to entitle them to do business." It is contended that this section requires all insurance companies to vouch for the good character of all their agents, and that if the requirement as to their license payment were solely a revenue measure, there would be no necessity for "rules and regulations." It appears, however, from the language immediately following and the succeeding sections of the act, which was considered and cited in the original decision, that the regulatory provisions in this act were intended to cover agents of unauthorized and unlicensed insurance companies, and specifically "agents soliciting insurance" of all companies. As was pointed out in the decision, evidence of "moral character and integrity" is required as a condition precedent to the license of such soliciting agents, and their license may be revoked "at any time by the insurance commissioner in his discretion." Ga. L. 1912, §§ 6, 7, p. 124; Park's Code, § 2445(a),(b); Michie's Code, § 2448(1),(2), There are also other regulatory requirements contained in the act of 1925 with reference to the good character and conduct of fire and casualty insurance agents in the granting and revocation of their licenses. Ga. L. 1925, 211, 212; Michie's Code, § 2448(6), (10). None of these provisions, however, relate to agents of other insurance companies; and there is no reference in any of the acts and statutes to the character and conduct of adjusters of health and accident insurance companies, such as are involved in this case. In the act of 1912, relied upon, although section 22 requires compliance with "such reasonable rules and regulations as the insurance

commissioner may in his discretion prescribe," it specifies only a person or persons "soliciting or writing life insurance" or "offering . . stock for sale to the public before procuring a license for such incorporation." That this act of 1912, if it applies at all to such agents as adjusters of licensed companies, is not intended as to agents as more than a revenue measure, save perhaps as to those agents who are therein specifically regulated, is further manifested by the provision of section 18 that "all fees, *license taxes,* and other dues and taxes now imposed by the laws of this State and by this act on insurance companies, shall be collected as now provided by law, and paid into the State treasury as hereinbefore provided." When this provision was enacted, the three-dollar license payment required of insurance agents was in force. Civil Code (1910), § 2448; Ga. L. 1887, pp. 123, 124. This designation of license payments as "license taxes" does not aid the contention of the movant, so as to require any change in the original decision. *Rehearing denied.*