# Richmond

### L. R. COLBERT, TRADING AS VIRGINIA CONSTRUCTION COMPANY V. ASHLAND CONSTRUCTION COMPANY, INC.

November 25, 1940.

Record No. 2268.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Eggleston and Spratley, JJ.

The opinion states the case.

*James O. Heflin,* for the plaintiff in error.

*Guy B. Hazelgrove* and *Ralph T. Catterall,* for the defendant in error.

HOLT, J., delivered the opinion of the court.

The plaintiff in this case, L. R. Colbert, trading as Virginia Construction Company, is seeking to recover an unpaid balance from the defendant, Ashland Construction Company, Inc., due on account of a construction contract which they had entered into. The value of the work done was $15,247.28; payments made had reduced it to $3,843.86, and it is to recover that sum that this action was brought.

There is no dispute about the amount due. Plaintiff was not permitted to recover because of his failure to comply with the provisions of Section 4722(1) of the Code of Virginia in that he had not registered the assumed or fictitious name under which he was doing business. There was no deception, but the trial court was of opinion that the statute is mandatory and so ordered.

Statutes of this nature have been widely adopted, but their construction has led to a great deal of litigation and to some confusion. Their phraseology is not always the same. A comprehensive note on this subject appears in 45 A. L. R. 198, supplemented by a further note on the same subject in 59 A. L. R. 455. In the first it was said:

"The majority of the cases sustain the rule that contracts or transactions entered into by individuals or partnerships which have failed to comply with statutes relating to the doing of business under assumed or fictitious names or designations not showing the names of the partners are not, for that reason, invalid and unenforceable by such parties."

Many cases are cited; most of them we have examined and they support this annotation, but there is higher authority to the contrary.

In Restatement of the Law, Vol. 2 on Contracts, section 580, it is said:

"The legislature can prohibit the formation of any bargain and thereby make it illegal. The question whether the legislature has done so depends on interpretation of the legislative action. *In case of express prohibition or of declaring the act a crime there can be no doubt.* With reference to the imposition of a penalty or the requirement of a license, the rule cannot be so broadly stated. Legislative intent must be sought in each particular case, and though it is generally true that the imposition of a penalty for entering into a bargain or performing an act that is the subject matter of the bargain makes the bargain illegal, that is not invariably the case. The same is true of a requirement of a license or inspection or some similar formality. A prohibition may be implied also from other terms of a statute." (Italics supplied.)

In the late case of *Kryl* v. *Frank Holton & Co.* (1935), 217 Wis. 628, 259 N. W. 828, the rule laid down in Restatement of the Law is cited and approved.

In *Padgett* v. *Silver Lake Park Corporation,* 168 Ga. 759, 149 S. E. 180, it was held that a real estate agent could not recover.

In *Dunn & McCarthy* v. *Pinkston,* 179 Ga. 31, 175 S. E. 4, it was held that the same rule applied to a retailer of shoes. To the same effect is *Prater* v. *Larabee Flour Mills Co.,* 180 Ga. 581, 180 S. E. 235.

■ In *Courtney* v. *Parker*, 173 N. C. 479, 92 S. E. 324, the same rule was applied, and it was said:

"It is well established that no recovery can be had on a contract forbidden by the positive law of the state, and the principle prevails as a general rule whether it is forbidden in express terms or by implication arising from the fact that the transaction in question has been made an indictable offense or subjected to the imposition of a penalty."

There this statement of the law in *Pinney* v. *First Nat. Bank*, 68 Kan. 223, 75 P. 119, 1 Ann. Cas. 331, is quoted with approval:

■ "Where a statute expressly provides that a violation thereof shall be a misdemeanor, a contract made in direct violation of the same is illegal, and there can be no recovery thereon, although such statute does not in express terms prohibit the contract or pronounce it void."

In North Carolina a recovery may now be had under an amended statute. *Security Finance Co.* v. *Hendry*, 189 N. C. 549, 127 S. E. 629.

In *Cashin* v. *Pliter*, 168 Mich. 386, 134 N. W. 482, 483, Ann. Cas. 1913C, 697, is this forceful statement:

"The one object of the act is manifestly to protect the public against imposition and fraud, prohibiting persons from concealing their identity by doing business under an assumed name, making it unlawful to use other than their real names in transacting business without a public record of who they are, available for use in courts, and to punish those who violate the prohibition.

"The object of this act is not limited to facilitating the collection of debts, or the protection of those giving credit to persons doing business under an assumed name. It is not unilateral in its application. It applies to debtor and creditor, contractor and contractee, alike. Parties doing business with those acting under an assumed name, whether they buy or sell, have a right, under the law, to know who they are, and who to hold responsible, in case the question of damages for failure to perform or breach of warranty should arise."

It was also said there that principles of estoppel did not apply.

■ "If the law prohibits a contract under criminal penalty or as a matter of general public policy or specifically denies the right to make it, of course it could not be legalized by ratification." *Fine Arts Corporation* v. *Kuchins Furniture Mfg. Co.*, 269 Mich. 277, 257 N. W. 822, 824.

See also, *Morgan Munitions Supply Co.* v. *Studebaker Corporation*, 226 N. Y. 94, 123 N. E. 146, and *Zindle, Inc.* v. *Friedman's Express*, 258 App. Div. 636, 17 N. Y. S. (2d) 594.

The same principles are approved in *Citizens State Bank of Long Beach* v. *Gentry*, 20 Cal. App. (2d) 415, 67 P. (2d) 364, 366:

"Undoubtedly, the rule in this state is that when it appears there is a violation of a statute designed for the protection of the public, with a penalty prescribed for the violation thereof, that such penalty is the equivalent of an express prohibition, and that a contract made contrary to the terms thereof is void."

In *McMullen* v. *Hoffman*, 174 U. S. 639, 654, 669, 19 S. Ct. 839, 845, 43 L. Ed. 1117, where the authorities are reviewed and the whole subject carefully examined, the court said:

"The authorities from the earliest time to the present unanimously hold that no court will lend its assistance in any way towards carrying out the terms of an illegal contract."

In the leading case of *Continental Wall Paper Co.* v. *Voight & Sons Co.*, 212 U. S. 227, 29 S. Ct. 280, 292, 53 L. Ed. 486, "The Wall Paper Case," an anti-trust statute, Act of July 2, 1890, ch. 647, 26 Stat. 209 [15 U. S. C. A., sections 1-7, 15 note], was under review. Mr. Justice Harlan gives this reason for the rule:

"In such cases the aid of the court is denied, not for the benefit of the defendant, but because public policy demands that it should be denied without regard to the interests of individual parties. It is of no consequence that the present defendant company had knowledge of the alleged illegal

combination and its plans or was directly or indirectly a party thereto. Its interest must be put out of view altogether when it is sought to have the assistance of the court in accomplishing ends forbidden by the law."

"Where the statute imposes a penalty on the doing of an act without prohibiting it or expressly declaring it illegal or void, the general announced rule is that an agreement founded on or for the doing of such penalized act is void. * * * It would seem that in all cases the true rule is that the question is one of legislative intent, and the courts will look to the language of the statute, the subject matter of it, the wrong or evil which it seeks to remedy or prevent, and the purpose sought to be accomplished in its enactment; and if from all these it is manifest that it was not intended to imply a prohibition or to render the prohibited act void, the courts will so hold and will construe the statute accordingly." 17 C. J. Secundum, Contracts, section 202, p. 557.

This general rule was recognized in *Watters & Martin* v. *Homes Corp.*, 136 Va. 114, 116 S. E. 366, where it was said:

"The general rule of law is that a contract made in violation of a statute is void; and that when a plaintiff cannot establish his cause of action without relying upon an illegal contract he cannot recover."

There an act governing the sale of securities, commonly known as the "Blue-Sky Law," Acts 1918, ch. 408, came under review. A judgment for the purchase price of stock sold in violation of its terms was sustained and this reason therefor was given: "The intent of the Legislature, as disclosed by the act, must govern." Section 18 of that act declared that:

"The act *shall not be construed to prevent the sale* of purely speculative securities, but to give to the Commission power to require that the promoters of such securities shall honestly apply the proceeds of the sale thereof to the purpose for which such securities are sold; * * * " (Court's italics).

If under the very terms of the statute securities might be sold, then of course the Legislature intended that the purchasers should pay for them.

With this in mind, the principles applied in *Massie* v. *Dudley*, 173 Va. 42, 3 S. E. (2d) 176, apply here. There an unlicensed real estate agent was not permitted to recover for services performed. Here an unregistered contractor, working under an assumed name, has not been permitted to recover for work done. The registration required of business enterprises is in itself a license to do business; and if they do business under a trade or assumed name without first having complied with this statutory requirement, they shall, upon conviction, be fined or imprisoned or fined and imprisoned. If there was any uncertainty as to legislative intent, that has been settled by *Leckie* v. *Seal*, 161 Va. 215, 170 S. E. 844:

"The main object of the statute is to prevent fraud and to compel an individual or a corporation to disclose the name of the real owner of the business, in order that the person or corporation may sue in or be sued by the proper name. There is a further reason for the enactment of the statute and that is that prospective creditors of the firm or corporation may, by an examination of the lien dockets, determine to whom credit can be extended. Judgments are docketed in the true name of the plaintiff and defendant, and all that is required of an examiner of the lien docket, in order to ascertain against whom a judgment is docketed, is to look for the name of the person or corporation under investigation."

If an unlicensed real estate agent who effects a sale and sues for his commission can not recover, then an unregistered or unlicensed contractor who does work under an assumed name should not. These debtors stand upon a common footing and these creditors stand upon a common footing. Real estate brokers are not less entitled to protection than are building contractors. Their equities are equal. But, as was pointed out by Mr. Justice Harlan, the rule which has been invoked is not for the benefit of the defend-

ant but because of public interests. The tendency to do business under trade-names is widespread—we find Boston Bargain Houses in many places. And so the Legislature thought that there should be some place to which those who contemplate contracts might go for authentic information as to the identity of the party with whom they contemplated contracting.

 There is another and a stronger reason at hand. It is everywhere conceded that when "the main object of the statute is to prevent fraud," the statute itself should be liberally construed to the end that the legislative purpose may be carried into effect, unless it is perfectly plain from the statute itself that the Legislature entertained no such intentions; and that is not this case. Certainly the language of the statute governing traders and contractors is not less imperative than is that which tells us what real estate brokers must do.*

---

*Act approved March 27, 1936, Acts of Assembly 1936, chapter 326, pp. 530, 531:

"No person nor corporation shall conduct or transact business in this State under any assumed or fictitious name unless such person or persons or corporation shall sign and acknowledge a certificate setting forth the name under which such business is to be conducted or transacted, and the names of each and every person or corporation owning the same, with their respective post office and residence addresses, and where the corporation is a foreign corporation the date of the certificate of authority to do business in Virginia issued to it by the State Corporation Commission, and file the same in the office of the clerk of the court in which deeds are recorded in the county or corporation wherein the business is to be conducted." Section 1.

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

"Any person violating any of the provisions of this act shall be deemed guilty of a misdemeanor, and upon conviction thereof, shall be fined not exceeding one thousand dollars, or imprisonment not more than one year, or both." Section 3.

Act approved March 21, 1924, Acts of Assembly 1924, chapter 461, p. 691:

"Be it enacted by the General Assembly of Virginia, That on and after January first, nineteen hundred and twenty-five, it shall be unlawful for any person, copartnership, association or corporation, to act as a real estate broker or real estate salesman, or to advertise or assume to act as such real estate broker or real estate salesman,

We have seen in the Georgia cases that the same principles apply in each instance.

When the law prohibits a thing, it is unlawful to do it, and the courts should not lend their aid to the enforcement of prohibited contracts. Courts are established to afford remedies to litigants who seek relief growing out of lawful transactions, and not to aid those who would invoke their assistance to enforce contracts made in violation of law. Their chief purpose is to secure the observance of laws enacted for the safety and protection of life and property and general well-being of the people, and it would be a startling departure from this purpose if they should also give relief to parties who were seeking to enforce contracts made in violation of law.

It would be strange, indeed, were the Commonwealth to say to a litigant, "You have a valid contract and the entire machinery of the State may be invoked in its enforcement, but of course you must go to jail."

And so, without more, the rule adopted in Restatement of the Law, "in case of express prohibition or of declaring the act a crime there can be no doubt," is logical and should be adopted.

The Virginia cases which we have cited control, and we have not deemed it necessary to discuss others which have only an indirect bearing upon the issue here. Colbert, trading as Virginia Construction Company, can not recover, not because his claim is without merit, but because

---

without a license issued by the (Virginia Real Estate Commission). No copartnership, association or corporation shall be granted a license, unless every member or officer of such copartnership, association or corporation, who actively participates in the brokerage business of such copartnership, association or corporation shall hold a license as a real estate broker, and unless every employee who acts as a salesman for such copartnership, association or corporation shall hold a license as a real estate salesman." Section 1.

 * * * * * * *

"Any person or corporation violating a provision of this act shall upon conviction thereof, if a person, be punished by a fine of not more than five hundred ($500) dollars, or by imprisonment for a term not to exceed (six months) or by both such fine and imprisonment, in the discretion of the court, * * * " Section 12.

he has failed to do those things which the statute says that he must do. The benefit which the defendant has received is incidental and accidental. The law of contracts is not interested in helping him but in curbing the plaintiff; in this instance enacted to prevent fraud and for a public purpose.

The judgment appealed from must be affirmed, and it is so ordered.

*Affirmed.*

HUDGINS, J., dissenting.