## 𝕾𝖙𝖆𝖚𝖓𝖙𝖔𝖓

E. H. WELLES, ET ALS. V. EDGAR W. REVERCOMB, ET ALS.

September 7, 1949.

Record No. 3515.

Present, All the Justices.

The opinion states the case.

*William W. May*, for the appellants.

*Hardee Chambliss, Jr.*, for the appellees.

HUDGINS, C. J., delivered the opinion of the court.

The question involved on this appeal is, whether failure of a building contractor to pay the license tax required by the Commonwealth for engaging in the business of a general contractor, bars his right to recover the balance due on a contract for construction of a building.

The pertinent allegations of the bill are, that E. H., Leonard C. and Richard H. Welles, partners, trading as "Welles Engineering Company," executed a written contract with Edward W. Revercomb, the owner of a lot, for the removal of a small garage and an old residence, the construction of a small stable, and the construction of a dwelling, according to certain plans and specifications; for which the owner agreed to pay all costs of labor and materials, plus 15%; payments to be made on Thursday of each week on presentation of itemized bills for work done and materials furnished the provious week. The intended maximum amount of the cost was stated to be $15,400. There were other provisions regarding payment for extra

work to be done, if requested. These provisions are not pertinent to the issues now before the court.

Work on the project was begun on November 26, 1947, and continued until April 14, 1948. During this period the owner paid the contractors, as per his agreement, weekly sums aggregating more than $14,000. The owner refused to make any payments for labor performed or materials furnished after April 14th. The unpaid balance now claimed to be due is $2,655.27.

While the dwelling was under construction Ethel F. Nagle acquired an interest in the property. After the owners had declined to make any other payments, the contractors perfected a mechanic's lien, and instituted this suit to enforce its payment. The owners filed a special plea, setting up the failure of the contractors to pay the required license tax to the Commonwealth as a bar to the suit. On the hearing the trial court sustained the special plea and dismissed the case. The contractors appeal.

Appellants contend that the pertinent provisions of the Tax Code, cited below, do not expressly declare the contract made by an unlicensed general contractor to be void, and that a rational construction of them is that they were intended as revenue measures only.

Appellees contend that inasmuch as the statutes declare the conduct of such business by unlicensed persons to be unlawful, and subjects the offenders to punishment as misdemeanants for each separate offense, prohibition is implied, so that a contract based on such act by an unlicensed party is void and unenforceable, though not expressly so declared by the statute.

The decision of the question depends upon whether the statute was enacted for the sole purpose of raising revenue, or whether it was enacted to protect the public against fraud or imposition, or to safeguard public health or morals. Both litigants rely upon the language of the statutes and former decisions of this court, as well as other authorities.

█ The pertinent provisions are found in sections 127, 136 and 176 of the Tax Code. Section 127 declares it to be unlawful for any person to engage in business, employ-

ment, or profession, for which a license tax is required, without paying such tax. This is a general provision and applies to every person engaging in any occupation, profession or calling, for which a license tax is required.

Section 176 defines the activity of a general contractor for which a license is required, and requires such contractor to obtain, on January 1 of each year, a license for the conduct of such business during that year. The amount of the tax is based upon the amount of gross receipts from the business during the previous year. If such receipts are less than $1,000, no tax is required. If such receipts exceed $1,000, and are not more than $5,000, the tax is $5.00; if they are more than $5,000, and do not exceed $10,000, the tax is $10.00, and the graduated scale of tax is continued up to $300,000, for which the tax is $250.00.

Section 136 imposes the penalties for doing business without a license. No penalty is imposed for doing business for a month, but if the business is conducted for a longer time, the amount of the penalty is 10% of the amount of the license tax, which penalty is added to, and is required to be paid with the license tax and "shall become a part of the license tax." If such failure continues, it is declared to be a misdemeanor, and, on conviction, the offender is subject to a fine of not less than $5.00, nor more than $1,000, for each separate offense committed after the expiration of a month. The license tax and the penalty must be assessed against such persons, and collection enforced "in the manner provided by law for the enforcement of the collection of other taxes."

It does not appear that appellants had engaged in any business for which a license tax was required prior to November, 1947. Assuming this to be true, the amount of the tax for which appellants were responsible would be based upon all other contracts which they had accepted before applying for the license, plus the gross amount of orders or contracts which they estimated they would accept between the time of the issuance of the license and the 31st day of December following. Inasmuch as it appears

that the work on the contract for the year 1947 amounted to less than $1,000, it is uncertain whether appellants would be required to pay any license tax for that year. However, it does appear that during the year 1948 appellants' receipts were in excess of $1,000, and hence there is no doubt that they were liable for a tax for the year 1948, which it is admitted was not paid.

■■ There are no provisions of the statute prescribing the experience, qualifications or other tests of one who desires to obtain a general contractor's license, or regulating the conduct of such business after the license has been procured. There are such regulations that apply to plumbers and steam-fitters, upon whom a license tax is imposed by the same statutes cited above. Tax Code, sec. 176, and Michie's Code 1942, sec. 1544.

The fines and penalties imposed for doing a contracting business without obtaining a license are not paid into the State treasury to augment the Literary Fund, as are fines and penalties imposed for other violations of law, but such fines and penalties are declared to be a part of the license tax imposed.

There is no provision expressly declaring that contracts made by an unlicensed contractor shall be unenforceable. There is no implied intent to deprive such a contractor of a right to recover for work done and materials furnished by him. Indeed, the statutes contemplate that valid contracts may be made before the license is applied for. The amount of these contracts, plus the estimated number of other contracts which may be obtained before December 31 of the current year, is made the basis for the amount of the tax to be paid. The only reasonable inference to be drawn from these provisions is that the legislature did not intend to make such contracts unenforceable. When the object of the statute is not for the purpose of regulating the business for public health, public morals, etc., but solely for the purpose of obtaining public revenue, the penalty imposed is regarded as being upon the person and not upon the business. Contracts made in the course of such business are

valid and enforceable. The question of the license tax in such cases is one between the State and the person engaging in the business, and is not a matter in which third persons are concerned. *John E. Rosasco Creameries* v. *Cohen*, 276 N. Y. 274, 11 N. E. (2d) 908, 118 A. L. R. 641, and annotation; *Patterson* v. *Southern R. Co.*, 214 N. C. 38, 198 S. E. 364; *Strother* v. *Mutual Benefit Health, etc., Ass'n*, 49 Ga. App. 811, 176 S. E. 84.

Appellees contend that doing business without a license is declared unlawful, and that subjecting the offender to a fine is evidence of the legislative intent to declare a contract made by an unlicensed person an unlawful act. In support of this contention they cite the following Virginia cases: *Wilson* v. *Spencer*, 1 Rand. (22 Va.) 76, 10 Am. Dec. 491; *Massie* v. *Dudley*, 173 Va. 42, 3 S. E. (2d) 176, and *Colbert* v. *Ashland Constr. Co.*, 176 Va. 500, 11 S. E. (2d) 612.

The action in *Wilson* v. *Spencer, supra,* was instituted for the recovery of a debt evidenced by a bond given to the president of an unchartered bank for bank notes issued by it in violation of the statute. The court denied recovery on the ground that, while the act did not expressly declare the bond to be void, the act of negotiating the bond and the bank notes in consideration thereof, contravened a regulatory statute enacted for the welfare of the public generally. The court said: "Indeed the Commonwealth, whose policy is thus violated, may be considered as the real party."

Section 4722 (1) Michie's Code 1942, requires every person or corporation who conducts a business under an assumed or fictitious name, to record a certificate giving the true names of the owners of the business. It was held in *Colbert* v. *Ashland Constr. Co., supra,* that the statute was adopted under the police power of the State to prevent fraud and for the protection of the public from imposition. It was declared that the main object of the statute was to give those who contemplated doing business with such person or corporation an opportunity to ascertain the real names of the owners, so that their credit rating could be more readily ascertained, and, if it became necessary to sue, to know the

names of the parties against whom suit might be brought. Having so construed the statute, it was logical to apply the general rule and hold, as was held, that a contract made with parties who had not recorded the required certificate was void and unenforceable.

It is interesting to note that after the publication of the opinion in November, 1940, the statute was amended at the next session of the General Assembly (Chap. 286 of the Acts of 1942), to the effect that failure to comply with the provisions of the act should not be construed as a bar to recovery if, before final judgment, the required certificate was recorded, and that fact brought to the attention of the court. *Bain* v. *Boykin*, 180 Va. 259, 23 S. E. (2d) 127.

In each of the foregoing cases the question of a regulatory statute, adopted under the police power of the State to protect the public against fraud and imposition, was involved. This was expressly stated to be the case in *Massie* v. *Dudley, supra,* which involved the question of whether an unlicensed broker was entitled to recover commissions for negotiating a sale of land. Mr. Justice Spratley, speaking for the court, said:

"In this State, we have followed the general rule that a contract made in violation of a statute is void and there can be no recovery thereon, unless it is apparent from the statute that the legislature did not intend to make the contract void and unenforceable, but simply to leave those violating its provisions amenable to its penalties. * * *

"Statutes regulating the real estate business, and requiring brokers and salesmen to procure a license before acting as such, have been enacted in many States. They have the same general purpose and are designed to protect the public from the fraud, misrepresentation and imposition of dishonest and incompetent persons. The reasons are not hard to see. The relations of trust and confidence which lie in the very nature of the business require that honesty and a fair amount of intelligence be exercised by those engaged in its pursuit. The records of the courts disclose far too many instances of litigation arising from unrestricted and unregulated

agencies in this field. The regulation is an exercise of the police power, and not merely a revenue measure."

The distinction pointed out between the construction of statutes which were adopted for the sole purpose of obtaining revenue and statutes adopted under the police power of the State for the protection of the general public welfare, is recognized in other jurisdictions, and by other authorities. See *Hughes* v. *Snell*, 28 Okl. 828, 115 P. 1105, 34 L. R. A. (N. S.) 1133; *Simmons* v. *Oatman*, 110 Kan. 44, 202 P. 977; *Lloyd* v. *Johnson*, 45 App. Cas. D. C. 322; *Howard* v. *Lebby*, 197 Ky. 324, 246 S. W. 828, 30 A. L. R. 830, and annotation 834; 53 C. J. S. p. 711; 12 Am. Jur., Contracts, sec. 163, p. 658; 6 Williston on Contracts, Rev. Ed. sec. 1768; 2 Elliott on Contracts, sec. 669, and *Bernstein* v. *Peters*, 68 Ga. App. 218, 22 S. E. (2d) 614. Contra: Restatement of the Law of Contracts, sec. 580.

The decree of the trial court is reversed and the case remanded.

*Reversed and remanded.*