# Staunton

## F. S. Bowen Electric Company, Inc. v. Paul J. Foley and Others.

September 10, 1952.

Record No. 3954.

Present, All the Justices.

The opinion states the case.

*J. Foster Hagan* and *Maxwell A. Ostrow*, for the appellant.

*Lawrence W. Douglas, James H. Simmonds* and *Oren R. Lewis*, for the appellees.

SMITH, J., delivered the opinion of the court.

The question raised for decision by this case is whether a contractor who is not licensed and registered as a contractor under Chapter 7, Title 54, Code of Virginia of 1950 (§§ 54-113 to 54-145 inclusive) may recover the balance claimed to be due for work performed the total cost of which was more than $20,000.

The Code sections above cited were originally enacted by the Acts of 1938, chap. 431, and described as "An ACT to regulate the practice of general contracting in Virginia; to establish a State Registration Board for Contractors and to define its powers and duties; to provide the method of obtaining a certificate of registration to engage in the practice of general contracting, and to fix fees for such certificates; to dispose of the monies raised; to provide the method of suspension and can-

cellation of such certificate of registration; and to prescribe the punishment for violation of the provisions of this act." More specifically, section 54-113(2)[1] defines general contractor or subcontractor and section 54-128 provides that, "It shall be unlawful for any person to engage in, or offer to engage in, general contracting or subcontracting in this State, unless he has been duly licensed and issued a certificate of registration under the provisions of this chapter." Any violation of the statute is punishable as a misdemeanor.

This suit was instituted on March 16, 1948, by the appellant F. S. Bowen Electric Company, Incorporated, a District of Columbia corporation engaged in the business of furnishing and installing electrical equipment, for the purpose of enforcing several mechanics' liens which had been filed against a leasehold interest in certain real estate on which the Foley Corporation had erected an outdoor motion picture theater. The owners of the real property and the lien holders were made parties to the suit, but the appellee Foley Corporation, a Virginia corporation, is the real party defendant in interest. Various pleadings have been filed by both sides including an answer and cross bill by the Foley Corporation, but we are herein concerned solely with the propriety of the trial court's action in sustaining a demurrer to the appellant's amended bill and dismissing the same.

The original bill of complaint stated that "* * * your complainant * * * entered into a contract for the furnishing and installation of certain electrical equipment for the said theater at and for a full contract price of $34,757.20; * * * and that there is a balance due and owing under said contract of $18,033.82." Foley Corporation filed a special plea to the bill alleging that the appellant was not entitled to maintain its suit, since it had not complied with the registration statute hereinbefore referred to. The plea was stricken. Thereafter, the appellant

---

[1] " 'General contractor' or 'subcontractor' shall mean any person, firm, association or corporation that for a fixed price, commission, fee or percentage, undertakes to bid upon, or to construct or superintend the construction of, any building, highway, bridge, railway, sewer, pipe line, grading, or any improvement, or structure or part thereof, when the cost of the undertaking or a subcontract thereunder is twenty thousand dollars or more; and any person, firm, association or corporation who shall bid upon or engage in constructing or superintending the construction of any structure or any undertaking or improvements or part thereof above mentioned in the State, costing twenty thousand dollars or more, shall be deemed to have engaged in the business of general contracting or subcontracting in this State."

amended its bill of complaint and undertook to show that two separate contracts had been entered into on the same project: one in the sum of $19,689.35 for furnishing and installing certain electrical equipment on a time-and-material basis, and another in the sum of $15,067.85 for performing certain work in connection with the building of the theater apart from the aforementioned electrical work. Both of these alleged separate contracts amounted in the aggregate to $34,757.20.

No itemized statement of account was filed with the original bill, nor was such an account filed with the amended bill. Thereupon the appellee filed its demurrer to the amended bill as follows:

"1. The amended Bill of Complaint shows upon its face that the complainant seeks to enforce a mechanics [sic] lien for money alleged to be due it, when the cost of the undertaking by the complainant was more than Twenty Thousand Dollars ($20,000.00); and the said amended Bill further shows that, at the time the work was alleged to have been performed and the materials furnished upon said undertaking, the complainant was not registered as a contractor in accordance with the requirements of Section 4359(103) et seq., of the Code of Virginia, 1942, as amended. [§ 54-113 et seq., Code of 1950].

"2. The Complainant has not filed with his amended Bill of Complaint an itemized statement of his account as required by Section 6437 of the Code of Virginia, 1942, as amended." (§ 43-22, Code of 1950).

Thereafter, the appellant tendered what purported to be an itemized statement of its account and was granted leave to file the same and have it made a part of the amended bill.

On February 12, 1951, the trial court sustained the demurrer to the amended bill with the itemized statement as a part thereof and dismissed the bill.

The appellant concedes that it had not been duly licensed and issued a certificate of registration by the State Registration Board for Contractors at the time it filed its amended bill and, therefore, the only questions for us to decide are: (1) Should the appellant have been licensed and registered, and if so, (2) what effect does its failure to be licensed and registered have upon its right to recover in this suit?

The appellant contends that it was not required to register

under Code section 54-113 *et seq.,* because: (1) the statute is unconstitutional; (2) it has been licensed as an electrical contractor under Code section 58-297 and, therefore, is not required to be licensed under any other section of the Code; (3) it is not a general contractor or subcontractor as these terms are defined in Code section 54-113(2), because it is a contractor under Code section 58-297 *et seq.;* and (4) it did not contract for work which cost $20,000 or more.

We hold that Chapter 7, Title 54, Code of Virginia, 1950, is constitutional. The statute is designed to protect the public from inexperienced, unscrupulous, irresponsible, or incompetent contractors and to effectuate this purpose it requires a demonstration of ability, character, and financial responsibility as well as a good record of past performance. The necessity of regulating such businesses is now widely recognized and such regulations are a valid exercise of the police power of the State. *Northen* v. *Elledge,* 72 Ariz. 166, 232 P. (2d) 111; *Franklin* v. *Goldstone Agency,* 33 Cal. (2d) 628, 204 P. (2d) 37; *State* v. *St. Petersburg,* 133 Fla. 766, 183 So. 304, 118 A. L. R. 667; *Kaiser* v. *Thomson,* 55 N. M. 270, 232 P. (2d) 142; *Ross-Frankel, Inc.* v. *State,* 179 Tenn. (15 Beeler) 320, 165 S. W. (2d) 590. Comparable legislation in this State (Chapter 18, Title 54, Code of 1950, dealing with real estate brokers and Chapter 27, § 81, Code of the city of Richmond, 1937, as amended, dealing with the examination and licensing of plumbers) has been upheld as constitutional. *Rountree Corp.* v. *Richmond,* 188 Va. 701, 51 S. E. (2d) 256; *Massie* v. *Dudley,* 173 Va. 42, 3 S. E. (2d) 176.

The appellant next contends that since it has been licensed as an electrical contractor under Code section 58-297, it is not required to be licensed under any other section of the Code.

It will be observed that Title 54 of the Code is devoted to the regulation of various professions and occupations including, among others, architects, attorneys at law, contractors, embalmers, plumbing, real estate brokers, and pawnbrokers. The obvious common basis of all of these statutes which were grouped by the revisors under Title 54 is that all of the included professions and occupations are related to the health, safety, morals, or welfare of the public. The legislature has consid-

ered that the public interest is such that it demands their regulation.

On the other hand, Title 58 of the Code, classified as Taxation, contains various statutes the common purpose of which is the collection of revenue. Thus, all of the following professions and occupations are taxed; contractors, etc., (§ 58-298), architects (§ 58-370), attorneys at law (§ 58-371), engineers (§ 58-376), pawnbrokers (§ 58-392), and real estate agents (§ 58-398).

It would be just as illogical for the appellant to argue that any person holding himself out as a lawyer, who had paid the State revenue license imposed by Code section 58-371, would thereby be excused from submitting himself to the bar examination or otherwise establishing his professional qualifications as required by Code section 54-42 *et seq.*

The appellant attaches special significance to the words found in Code section 58-299 to the effect that if it had obtained the required State revenue license ''* * * no further license shall be required by the State or other city or town for conducting any such business [contractor, electrical contractor, plumber, and steam fitter] within the confines of this State, except that qualification under § 32-61 may be required of contractors doing plumbing.'' Clearly, this only means that if an electrical (or other) contractor has paid the State license tax to the treasurer of the city or county where his principal office is located, he cannot again be required to pay the same tax in another city or county. Perhaps it is an oversight that Code section 58-299 does not refer to the exception that contractors when liable must register under Code section 54-113 *et seq.*, but this does not excuse the appellant's failure to register. The two statutes are not mutually exclusive. The case of *Welles* v. *Revercomb*, 189 Va. 777, 54 S. E. (2d) 878, presented the question whether failure of a building contractor to pay the license tax required by the tax Code of Virginia barred his right to recover the balance due on a construction contract. Mr. Chief Justice Hudgins wrote the opinion for the court which held that the right to recover was not barred and pointed out the distinction between statutes which are adopted for the sole purpose of raising revenue and regulatory statutes which are adopted under the police power of the State for the protection of the welfare of the general public.

■ The appellant next claims that it is not a general contractor or subcontractor engaged in construction work and that it does not sue on a construction contract as these terms are used in Code section, 54-113 *et seq.* We are unable to accept or comprehend the appellant's position that it ''did not bid for, it did not contract for, it did not engage in the construction of the theater.'' This in effect would destroy its entire case, since the essence of a mechanic's lien is that the complainant must have been a contractor or subcontractor and must have done work on the structure on which it claims a lien. We, therefore, move on to the last two contentions of the appellant.

Here we encounter the proposition with which no one takes issue, namely, that Code section 54-113(2) applies only to a person (as defined) who engages in, or offers to engage in, general contracting or subcontracting in this State involving $20,000 or more.

It will be recalled that whereas the appellant's original bill set forth a single contract in the sum of $34,757.20 (in excess of the statutory minimum), the appellant later became aware of the registration requirement and filed its amended bill which broke the account down into two contracts, one for $19,689.35 and another for $15,067.85 (each of which is obviously below the statutory minimum).

The appellant places great stress upon its contention that it was operating under two separate contracts each of which was below the $20,000 statutory limit. The appellee disputes this contention and points out that the amended bill shows that many of the job tickets appear on each itemized statement of account covering the two alleged contracts and that the dates of the job tickets show that both alleged contracts were performed during the same period of time. The appellee's statement is substantiated by the record. However, our view is that it makes no difference whether there were two contracts or not. Section 54-113(2) does not state the criterion to be the number of contracts; the limiting factor is the cost of the work bid upon or performed. Code section 54-113(2) says that ''any * * * corporation who shall * * * engage in constructing * * * any structure * * * improvement or part thereof above mentioned in the State * * * costing twenty thousand dollars or more, shall be deemed to have engaged in the business of general contract-

ing * * *.'' The legislature has stated the rule that when a contractor engages in the construction of any structure, or part thereof, and the cost of the work performed amounts to $20,000 or more, then the public interest is sufficiently involved to justify the imposition of regulations governing the licensing and registration of the contractor. It is the cost of the work to be done on a given project which determines whether or not the contractor is subject to the provisions of section 54-113 *et seq.* The reason for the cost limitation is obvious. The legislature has concluded that projects costing less than $20,000 do not sufficiently involve the public welfare to justify the imposition of the statute, whereas those costing $20,000 or more are of sufficient importance to justify regulation. However, there is nothing in the statute which is designed to work any hardship on the competent and qualified contractor.

*Ross-Frankel, Inc.* v. *State, supra,* involved an appeal from a conviction under an indictment charging that the appellant violated Chapter 70, Pub. Acts of 1931 of Tennessee in that it engaged in contracting without a license. The act there involved provided that a license shall be obtained before any general contractor undertakes for a fixed price to contract, erect, alter, or repair any building, structure, or private works of every character or nature whatsoever where the cost of the completed structure or improvement exceeds $10,000. The appellant, a New York contractor, had entered into two contracts on the same date with a Tennessee corporation without securing a license from the State board of licenses. The first contract called for the installation of a new store front and vault costing $7,750 and the second contract called for the installation of interior equipment costing $9,000. It was held that the law did not apply to unattachable and removable store fixtures and that the cost of the improvements would not be viewed as a whole so as to render applicable the statute requiring a general contractor to obtain a license before undertaking improvements exceeding $10,000. The fact that there were two contracts was not disputed, but this did not have any bearing on the decision. The controlling fact was that part of the work done was not within the purview of the statute.

■ It is well settled that '' 'on a demurrer, the court will consider the whole record, and give judgment for the party who,*

*on the whole, appears to be entitled to it.'* The reason of this rule is this: Every judgment is the conclusion of law from all the facts of the case, and the court, to ascertain these, must look through the whole pleadings at common law." Burks, Common Law and Statutory Pleading and Practice § 213, p. 354 (4th ed. 1952). The appellant's pleadings show conclusively that the work performed by the appellant was, as it was stated to be in the appellant's original bill, one undertaking "for the furnishing and installation of certain electrical equipment for the said theater at and for a full contract price of $34,757.20." The appellant was engaged in performing part of the work which went into the construction of the outdoor theater. What it did was just as much a part of the completed project as was the work performed by any other contractor. The total cost of the work performed by the appellant on this one theater project was $34,757.20. Since the cost of the work performed was in excess of $20,000, it necessarily follows that registration under the statute was required.

█ Having reached the conclusion that the appellant was required to register under the statute, we proceed to inquire what effect its failure to register has on its right to recover. The appellant urges that its failure to register does not render its contract void and that it is entitled to recover for the reasonable value of the services rendered and materials supplied. The blunt answer to this final point is that a contract made in violation of a police statute enacted for the public protection is void and there can be no recovery thereon. *State Realty Co. v. Wood,* 190 Va. 321, 57 S. E. (2d) 102; *Bain v. Boykin,* 180 Va. 259, 23 S. E. (2d) 127; *Hancock Co. v. Stephens,* 177 Va. 349, 14 S. E. (2d) 332; *Colbert v. Ashland Const. Co.,* 176 Va. 500, 11 S. E. (2d) 612; *Massie v. Dudley, supra.*

In denying a real estate broker, who had failed to comply with the statute requiring a license (now Code § 54-730), the right to recover, we said in the *Massie Case,* 173 Va., at page 51:

"In this State, we have followed the general rule that a contract made in violation of a statute is void, and there can be no recovery thereon, unless it is apparent from the statute that the legislature did not intend to make the contract void

and unenforceable, but simply to leave those violating its provisions amenable to its penalties."

The opinion in the *Massie Case* shows that an exception to the general rule was applied in *Watters & Martin* v. *Homes Corp.*, 136 Va. 114, 116 S. E. 366, because of the legislative intent to make enforceable the contract there under consideration.

The general rule was followed in *Colbert* v. *Ashland Const. Co.*, *supra*, where a plaintiff who had failed to comply with the statute requiring registration of persons transacting business under assumed or fictitious names was denied the right to recover, because his action was brought on a contract forbidden by law.

Subsequent to the decision in the *Colbert Case* the statute there involved was amended so that the taint of illegality was removed from the cause of action and the suitor was given the right to maintain his action after compliance with the statute as amended. *Phlegar* v. *Virginia Foods, Inc.*, 188 Va. 747, 51 S. E. (2d) 227; *Watkins* v. *Bishop*, 181 Va. 191, 24 S. E. (2d) 422; *Bain* v. *Boykin, supra.*

However, the rule of the *Massie Case* has not been changed by legislative action and it was reaffirmed by this court in *State Realty Co.* v. *Wood, supra*, and it controls the decision in the case at bar.

The statute before us like the real estate brokers statute involved in the *Massie Case* expressly prohibits a contractor, as defined in the statute, from engaging in business until he has been licensed and registered, and the acts prohibited are termed unlawful and punishment is provided in the statute for the violation thereof. It is a police statute as distinguished from a revenue statute. *Welles* v. *Revercomb, supra.* As we said of the contract which the plaintiff relied on in the *Massie Case*, 173 Va., at page 51, "[it] is illegal, not merely invalid. It is void as being contrary to a positive statute and to public policy. Not merely the mode of its performance, but its substance is unlawful. The imposition of the penalty emphasizes the illegality."

The general rule that a contract made in violation of a statute is void applies here, since we find nothing in the language of the statute before us which indicates "that the legislature did not intend to make the contract void and un-

enforceable, but simply to leave those violating its provisions amenable to its penalties.'' There is nothing to be found by which we can presume it was intended that a violator should escape the consequences of his illegal acts and '' 'although we recognize the apparent hardship sometimes resulting, we have consistently held that the courts will not aid a party to enforce an agreement made in furtherance of acts expressly made illegal by the statute.' '' *State Realty Co.* v. *Wood, supra,* 190 Va., at page 325.

The decree of the trial court sustaining the demurrer and dismissing the amended bill of complaint is affirmed.

*Affirmed.*