## CIRCUIT COURT OF THE CITY OF ROANOKE

Old Dominion Lodge No. 1,
Fraternal Order of Police
of Roanoke, Va., Inc.

v.

Smoky Mountain Secrets, Inc.

January 2, 1991

Case No. (Law) 88-990

By Judge Roy B. Willett

I have carefully reviewed all the Memoranda filed herein. I have reviewed the evidence. The Court's opinion follows.

This matter is before this Court on the Plaintiff's Motion for Judgment which the Defendant has answered, denying that it has any obligation or owes any monies to the Plaintiff. The Plaintiff in this case is Old Dominion Lodge No. 1, Fraternal Order of Police of Roanoke, Virginia, Inc. (hereinafter "FOP"); the Defendant is Smoky Mountain Secrets, Inc. ("SMS"). FOP has alleged that SMS breached a contract between the parties. SMS has asserted that the contract in question violates provisions of Chapter 5 of Title 57 of the Code of Virginia (§ 57-48 *et seq.*). SMS has taken the position that the contract which FOP seeks to enforce is void because it violates the aforesaid Code provisions (hereafter referred to as Title 57). SMS has further pleaded that if FOP sustained any damages due to an alleged breach of contract by SMS, those damages are not recoverable because of the underlying, allegedly void contract.

Case law generally indicates that contracts in violation of statutory requirements cannot be enforced; courts will not lend their aid to the enforcement of contracts which attempt to circumvent public policy or legislative intent. A narrow exception has been carved from this rule: when the violated statute is merely a means of raising revenue, the trial court may balance the equities between the parties and, in appropriate cases,

enforce the contract. When the violated statute(s) was designed to effectuate a broad legislative intent to prevent fraud or to further public safety or morals, the trial court, regardless of the hardship to the plaintiff, will not enforce such a contract. In the case before this Court, it is my opinion that the purpose of the statutes at issue is regulatory in nature, enacted to prevent fraud upon the public. The Plaintiff's Motion for Judgment must fail.

### Statement of the Case

The evidence was heard by the Court, sitting without a jury, on September 7, 1990. FOP proved a basis for being awarded damages herein, based upon a breach of contract by SMS, subject to the illegality defense asserted by SMS. This Court has already ruled that the Contract upon which FOP based its claim had a term of five years, not one year as argued by SMS; this Court has further ruled that any amendment to Title 57 that went into effect on July 1, 1988, was not material to any issue before this Court in this case because the final year of the contract could have been performed by SMS before that date. The basic defense of illegality asserted by SMS is the primary subject of this opinion.

### Issues

(1) Does the Court need to determine if, in fact, FOP was required to register or qualify for an exemption under Title 57 of the Code of Virginia, or does the Court simply need to determine what FOP's belief was regarding its registration requirements under Title 57?

(2) Is SMS estopped from raising the illegality defense because SMS performed through four of the five years of the contract?

### Statement of Facts

The pertinent facts adduced at the trial of this case on September 7, 1990, are as follows. On or about December 6, 1983, FOP entered into a five-year contract with SMS. According to the contract, SMS agreed to run fund-raising campaigns on behalf of FOP by selling various food products in the Roanoke Valley. A small portion of the proceeds of the SMS campaigns was to go to FOP to benefit FOP's charitable and educational undertakings.

SMS performed as obligated under the contract for the first four years of the contract. During the first year of the contract, FOP received $15,915.00 from SMS. During the second, third, and fourth years, FOP received $15,959.50, $18,395.25, and $14,909.00, respectively, from SMS. During

the fifth and final year of the contract, however, FOP received nothing from SMS because SMS refused to conduct a campaign on behalf of FOP that year.

At trial, SMS claimed that it had refused to honor its contractual obligations during the fifth year of the parties' contract because FOP continued to refuse to comply with the registration requirements of Title 57. It was uncontradicted that SMS advised an officer of FOP that occurrences and experiences of SMS during the latter part of the fourth year of the contract emphasized SMS's need to have FOP properly registered; an officer of SMS testified to this effect without contradiction. The President of SMS, Charles Allen, testified that he became more acutely aware of the importance of the registration requirement during public hearings which he attended in Richmond in 1987. FOP did not deny that its Secretary, Stephen Kaylor, had received a specific request for FOP's compliance with Title 57 due to problems SMS had experienced elsewhere in the Commonwealth during the term of the contract with FOP; SMS produced testimony that it advised FOP that it would not complete the contract's fifth year unless FOP complied with Title 57. SMS had been accused of violating Title 57 in another campaign.

The Department of Consumer Affairs, which is charged with enforcing Title 57, did not seek to actually impose any penalty on FOP for violations of Title 57, but there were communications between the Department and FOP dealing with the matter.

*Discussion*

The courts of this Commonwealth have consistently ruled that contracts which violate Virginia statutes are void and unenforceable. *Lasting Products Co. v. Genovese*, 197 Va. 1, 87 S.E.2d 811 (1955); *Cohen v. Mayflower Corp.*, 196 Va. 1153, 86 S.E.2d 388 (1955); *F. S. Bowen Elec. Co. v. Foley*, 194 Va. 92, 72 S.E.2d 388 (1952); *Colbert v. Ashland Const. Co.*, 176 Va. 500, 11 S.E.2d 612 (1940). This rule has been followed in numerous jurisdictions. *Kessing v. National Mortg. Co.*, 278 N.C. 523, 180 S.E.2d 823 (1975); *Spivak v. Sachs*, 16 N.Y.2d 163, 263 N.Y.S.2d 953, 211 N.E.2d 329 (1965); *California Safety Ass'n v. California Compensation Ins. Co.*, 48 Cal. 2d 71, 307 P.2d 626 (1957); *Colten & Co. v. Manchester Sav. Bank*, 105 N.H. 254, 197 A.2d 208 (1964).

The seminal case in Virginia concerning contracts made in violation of a statute is *Colbert v. Ashland Const. Co.*, 176 Va. 500, 11 S.E.2d 612 (1940). In *Colbert*, the plaintiff, Colbert, doing business as Virginia Con-

struction Company, sought to recover the unpaid balance of a bill from the defendant. *Colbert*, 11 S.E.2d at 613. The Defendant contended that it did not have to pay the balance because the plaintiff had not, pursuant to a state statute, registered the fictitious name under which he was trading. Because the plaintiff was clearly in violation of a state statute, the defendant claimed, the contract was void; and because the contract was void, the defendant was not liable, even though he admitted that the money was owed and due to the plaintiff. *Id.* After numerous references and quotations from other jurisdictions, the Court concluded that contracts made in violation of clear legislative expression are void and cannot be enforced. The Court stated that the statute at issue was enacted to prevent fraud, and as such, it should be "liberally construed." *Id.* at 616.

The Court also stated that whenever a statute is enacted to protect the citizens of the Commonwealth from fraud or to further public safety or morals, the courts have a duty to effectuate this legislative intention by refusing to enforce contracts which contravene such statute:

> In such cases, the aid of the court is denied, not for the benefit of the defendant, but because the public policy demands that it should be denied without regard to the interests of individual parties. It is of no consequence that the present defendant company had knowledge of the alleged illegal combination and its plans, or was directly or indirectly a party thereto. Its interests must be put out of view altogether when it is sought to have the assistance of the court in accomplishing ends forbidden by the law.

*Id.* at 615, quoting, *Continental Wall Paper Co. v. Voight & Sons Co.*, 212 U.S. 227 (1909). The Court also noted that although the result of refusing to enforce such a contract could benefit an unworthy defendant and operate as a hardship on a plaintiff, a plaintiff cannot recover "not because his claim is without merit but because he has failed to do those things which the statute says that he must do . . . ." *Id.* at 617. In the case of *F. S. Bowen Elec. Co. v. Foley*, 194 Va. 92, 72 S.E.2d 388 (1952), the court refused to permit a real estate broker his commission, even though he had faithfully executed his work because the broker had not been registered and licensed pursuant to state statute. When I apply the *Colbert* case's reasoning to the case before this Court, I find that the Plaintiff cannot recover. The contract before this court violates Title 57 because FOP never registered or sought the required exemption. While this Court is aware of the high-caliber

composition of FOP's membership and its law enforcement orientation, nevertheless, FOP contracted in violation of statute. The contract before this Court contravenes the law of the Commonwealth; this Court cannot enforce it. The fact that SMS's motivation for refusing to continue and complete the fifth year of the contract is of questionable basis is immaterial. The protection of the public is of paramount concern, not whether or not the Defendant will be allowed to escape its obligations regardless of its behavior. The Motion for Judgment must be denied and dismissed; judgment must be granted to the Defendant.

Case law from other jurisdictions generally parallels the thinking of *Colbert*. A New Hampshire case, *Brooks v. R. A. Clark's Garage, Inc.*, 117 N.H. 770, 378 A.2d 1144 (1977), held against an automobile repair garage that had performed adequate, workmanlike, and appropriate work on the other party's automobile but had failed to provide a written estimate of repairs as required by a New Hampshire statute. The claim of the automobile repairer was denied even in *quantum meruit* by the Supreme Court of New Hampshire because the contract violated state law and could not be enforced. The Supreme Court of New Hampshire held that the statute requiring that estimated be in writing absolutely prohibited any recover by the garage. The Court noted that the point of the statute was to prevent fraud; therefore, to hold otherwise would be inconsistent with the legislative policy of having all automobile repair estimates reduced to writing. The District of Columbia Circuit Court denied recovery based upon a credit transaction for the sale of alcoholic beverages because the law of the District prohibited credit sales for liquor. *Fields v. Hunter*, 368 A.2d 1156 (D.C. Cir. 1977). This was the holding even though the liquor sale had been consummated and the purchaser received a windfall. In *Lund v. Bruflat*, 159 Wash. 89, 292 P.112 (1930), the Supreme Court of Washington denied recovery to an unlicensed plumber because the state law of Washington required all plumbers to be licensed and certified; the Plaintiff in *Lund* was not. From Maryland one finds the case of *Thorp v. Carte*, 252 Md. 523, 250 A.2d 618 (1969). The Maryland Court did not allow a licensed broker to recover his share of a commission for a sale under an agreement that required the owner to pay the balance of the earned commission to an unlicensed broker.

Although *Colbert* is the seminal case construing illegal and thus void contracts, subsequent decisions of the Supreme Court of Virginia have questioned the continued validity of *Colbert's* reasoning, given that the General Assembly legislatively overruled *Colbert* shortly after that opin-

ion was delivered. *See F. S. Bowen Elec. Co. v. Foley*, 194 Va. 92, 72 S.E.2d 288 (1952); *Phlegar v. Virginia Foods, Inc.*, 188 Va. 747, 51 S.E.2d 227 (1949); *Watkins v. Bishop*, 181 Va. 191, 24 S.E.2d 422 (1943). Given *Colbert* and its uncertainty, the Court in *Welles v. Rivercomb*, 189 Va. 777, 54 S.E.2d (1949), announced a test to determine whether a contract should be unenforceable if it allegedly violated state statute: if the statute were enacted for the sole purpose of raising revenue, the Plaintiff could recover; however, if the purpose of the statute was to curb fraud and generally protect the public, then the contract could not be enforced. *Welles*, 43 S.E.2d at 879. A threshold determination must be made regarding whether the statute is regulatory or revenue-raising in nature. As a guide to this determination, the courts consider the policy that motivated the violated statute. The disposition of the present case depends on the legislative history of Title 57 of the Code of Virginia. In *Welles* the Supreme Court of Virginia reviewed a license tax requirement. The Code provisions concerning payment, collection, assessment, and penalties for the failure to procure required licensing were clear. In the *Welles* case, the statute at issue expressly dealt with taxation. *Id.* at 879-880. Further, the Supreme Court of Virginia noted that since "[t]he fines and penalties imposed . . . are not paid into the State treasury to augment the Literary Fund, as are fines and penalties imposed for other violations of law," then this statute was not meant to protect the public from fraud. *Id.* Accordingly, the Court permitted the Plaintiff to pursue his action to recover on the contract.

Applying the *Welles* test to the case at bar, it is obvious that Title 57 is regulatory in nature, including its registration/exemption requirements. This Court therefore should not enforce a contract violating Title 57. It should be noted that *Welles* stated that when fines and penalties are paid into the State Literary Fund, this is an indicia of a regulatory statute. Section 57-59, Code of Virginia, as amended, provides that penalties for Title 57 violations are to be paid to the Literary Fund. It would appear under the *Welles* test and due to the fact that penalties would be received into the Literary Fund, in the case before this Court, there is an illegal, unenforceable contract present. Title 57 is regulatory. The Literary Fund has been designated to be the recipient of penalties paid for its violations. Statutes having a purpose of raising revenues provide for the payment required thereby to be made to the Department of Taxation.

Although there is hardly any recorded legislative history aiding us in reviewing Title 57, or its amendments, nevertheless, a common thread throughout Chapter 5 seems to be the prevention of fraud and the com-

pulsion of vendors and solicitors to use candor and make full disclosure when soliciting citizens of the Commonwealth. Title 57 was enacted, in the opinion of this Court, to curb fraud and prevent solicitors from taking advantage of the citizens of the Commonwealth; it was not enacted primarily to raise revenue.

The final issue yet to be addressed is that of estoppel *in pais*. The Supreme Court of Virginia has not expressly ruled on the issue of whether a defendant's prior performance should estop it from asserting the illegality of a void contract. In *Colbert v. Ashland Const. Co.*, 176 Va. 500, 11 S.E.2d 612 (1940), the Court, after quoting a Michigan case which had held that contracts which violate statutes are void, noted that the Michigan court held that estoppel did not apply in such cases. The Virginia Supreme Court, in a single sentence, merely stated that "it was said there [in the Michigan case] that principles of estoppel did not apply." I must conclude that estoppel does not apply in the case before this court based upon the law of this Commonwealth. Other courts have also arrived at this conclusion. *See, Inter-Continental Promotions v. Miami Beach First Nat'l Bank*, 441 F.2d 1356 (5th Cir. 1971), *cert. denied*, 404 U.S. 850 (1971). There is, however, authority to the contrary. *See, Wormuth v. Lower Eastside Action Project, Inc.*, 71 Misc. 2d 314, 335 N.Y.S.2d 896 (1972).

### Conclusion

The purpose and policy of Chapter 5 of Title 57 of the Code of Virginia are to prevent fraud and to require that entities soliciting in Virginia register with the Commonwealth or apply for an appropriate exemption. The Plaintiff herein, Old Dominion Lodge No. 1, Fraternal Order of Police of Roanoke, Virginia, Inc., failed to do either, and it now is saddled with a contract violating state statute. This Court, like most other courts, will not aid a party which makes a contract that contravenes the public law; this Court must leave the parties as it found them. This Court cannot aid an unlawful contract because the statute violated by the contract in question was enacted to protect the public and encourage the reduction of fraud upon the public. Finally, the Defendant, Smoky Mountain Secrets, Inc., is not estopped by its past behavior and performance to claim the defense of illegality, the overriding purpose of the statutes in question is that of public protection. The Defendant adequately explained the timing of its repeated and absolutely asserted position that the contract in question was illegal. The reason given by the Defendant for its ceasing further performance was without contradiction, as was the Defendant's evidence that an

officer of the Defendant corporation told an officer of the Plaintiff corporation that the Defendant would not continue to perform according to the contract if the Plaintiff did not comply with Title 57.