# Richmond

VIRGINIA PUBLIC SERVICE COMPANY *v.* MANLEY W. CARTER.

March 11, 1937.

Present, Campbell, C. J., and Hudgins, Gregory,
Eggleston and Spratley, JJ.

The opinion states the case.

*James S. Easley, S. M. Nottingham* and *H. W. Anderson, Jr.,* for the plaintiff in error.

*A. Stuart Robertson* and *S. B. Carter,* for the defendant in error.

CAMPBELL, C. J., delivered the opinion of the court.

This action, by notice of motion for judgment, was brought by the plaintiff, Manley W. Carter, against the defendant, Virginia Public Service Company, to recover damages for an injury to a valuable horse, caused by the alleged negligence of defendant.

There was a trial by jury, which resulted in a verdict in favor of plaintiff in the sum of $1500. This verdict the trial court declined to set aside and accordingly entered judgment thereon.

The notice alleges: (1) That the plaintiff's horse was injured by a guy wire carelessly and negligently constructed; and (2) that the guy wire was left carelessly and negligently unboxed.

The first assignment of error is that the court erred in refusing to set aside the verdict as being contrary to the law and the evidence and without evidence to support it.

The facts, as determined by the verdict of the jury, are as follows: The plaintiff, who was postmaster at Orange, Virginia, was also the owner of a stock farm and engaged in breeding, buying and selling high-class horses for hunting and racing purposes. The farm of the plaintiff is adjacent to the Montpelier highway and there is located between the highway and the residence of plaintiff a field known as the paddock, which was used primarily for the purpose of exercising and conditioning horses. The defendant, a public service corporation, desired a right-of-way for its electric line through this paddock and it was granted on the express condition, as shown by the deed for the right-of-way, that all guy wires used in the construction of the line should be boxed or otherwise protected.

Subsequent to the conveyance of this right-of-way and approximately four years prior to the injury complained of, plaintiff applied to defendant for a service line to his residence, which line necessarily would pass over and through the paddock. Plaintiff requested that he be permitted to erect the service line but defendant refused to permit this to be done, and on the 18th day of April, 1929, the parties entered into a written contract for the erection of the line. The contract provided that the line should be built by the defendant at an approximate cost of $290, and that the title to the service line should vest in the defendant. No agreement as to the location of the line was embodied in the contract but plaintiff verbally suggested that it be located next to the "cemetery fence." This suggestion was not fully complied with but the line was erected about twelve feet from the fence, next to a mock-orange hedge. This hedge was erected by a former owner to obstruct the view of the cemetery from the residence, and was located ten or twelve feet from the fence which divided the cemetery and the paddock. The space between the fence and the hedge constituted a lane or runway for the horses, when turned into the paddock for exercise, and extends up a hill toward the residence of plaintiff. In the erection of the service line the defendant placed a pole in the hedge and to

this pole attached a guy wire which extended over the runway and was grounded at the bottom of the fence. This location of the guy wire prevented the horses from passing in a straight line up or down the runway, and forced them, in order to clear the wire, to make a curve in toward the hedge.

It is conceded that a guy was necessary at the point where placed, but the contention of plaintiff that a push guy from the opposite side of the pole would have sufficed, is sustained by the verdict. It was also shown that if an additional post had been used the line could have been constructed so as to avoid the necessity of a guy. It appears, too, as found by the jury, that the defendant was fully aware of the fact that plaintiff used the paddock exclusively for the purpose of exercising his horses.

On the morning of the accident, a Kentucky-bred horse called "Theos," sired by "Swope" and a grandson of "Man of War," was turned into the paddock for exercise. His trainer testified that he saw him enter the runway in a "sweeping gallop" and come out in a "hand gallop" and that he saw, as he came out, that he was badly injured. Upon examination, it was found that the jugular vein was cut and several inches of muscle protruded from the gash in his neck. After some months the wound healed, but, as a result of coming in contact with the guy wire, "Theos" was rendered useless as a racer or hunter.

An inspection of the guy wire disclosed that it was sprung and on it were blood, flesh tissue and horse hair, showing unquestionably that it had been struck by the horse.

It is not controverted that the guy wire was erected without any protection whatever around it.

Conceding, as we must do, that the jury has resolved all conflicts in the evidence in favor of the plaintiff, the defendant relies on the following propositions to defeat a recovery:

"a. The accident to plaintiff's horse was of such unprecedented and unusual character that the defendant did not owe the duty to anticipate such an occurrence nor to provide against it. To state the problems differently, it was what is regarded in law as an unavoidable accident.

"b. The defendant had constructed the line in question in accordance with the approved standard rules for the construction of such lines, and therefore was not negligent.

"c. The plaintiff by his attitude has estopped himself to claim that defendant was negligent in failing to provide a shield for the guy wire in question.

"2. The plaintiff was guilty of negligence which was the proximate cause of or contributed to the injury of his horse of which he complains."

While it is true that the record discloses that the injury to "Theos" was the only one suffered by the stock of plaintiff while exercising in the paddock, there is no evidence that the injury complained of was unavoidable.

There can be no doubt that the manner of constructing the service line was exclusively under the control of defendant, and unless we accept the suggestion of defendant that the doctrine known as the "unbending test" is determinative of the matter, then the question of negligence was properly submitted to the jury.

The claim of defendant that the service line was constructed in accordance with approved standard rules for the construction of such lines and therefore the defendant was not negligent, is a matter of open dispute. Witnesses for the plaintiff took issue with those for the defendant as to the proper construction of the service line, as well as on the question of the construction being in accordance with the general custom or approved standard rules. The conflict precipitated was referred to the jury and by it resolved in favor of plaintiff. In view of this state of the record, it becomes unnecessary to discuss the doctrine of "unbending test", for the reason that it is not involved in this case and anything said in regard to its application would be out of place.

The related questions of estoppel and negligence upon the part of the plaintiff are devoid of merit. Plaintiff testified that he was ignorant of the location of the guy wire in question until the accident occured. The defendant introduced evidence which tended to show that that the guy wire could be readily observed by one using the driveway to the

residence. Be that true or not, the jury accepted plaintiff's statement, and this finding concluded the question. The jury also found against the claim of defendant on the question of estoppel, as they had the right to do under the evidence.

■ Over the objection of defendant the court gave this instruction:

"The court instructs the jury that under the contract between the plaintiff and the defendant the plaintiff had no right to supervise the construction of the electric line over the plaintiff's property and was under no duty to inspect the same.

"Note: This instruction is to be read in connection with Instruction E."

Instruction E is as follows:

"The court instructs the jury:

"That he who undertakes to hold another liable in damages on the ground of negligence must himself be free from any negligence which contributed to the injury of which he complains. Therefore, the Court charges the jury that if they believe from all the evidence in this case that the plaintiff knew or by the exercise of ordinary care should have known of the location of the guy wire in question, and had reason to believe that the horse in question would probably be injured by coming in contact therewith, it was his duty to use reasonable care to prevent said injuries, and if he failed to do so he was guilty of contributory negligence, and if he was guilty of contributory negligence and such negligence contributed to the injury complained of, the jury must find a verdict for the defendant."

The ground of objection is that these instructions are in conflict. We do not think so. Under the contract, the erection of the service line was under the exclusive control of defendant and the plaintiff had a right to expect a fulfillment of the terms of the contract, viz., that the service line would be constructed with ordinary care, and there was no duty on plaintiff to supervise the work. Likewise, no duty was imposed upon plaintiff to subsequently inspect the service line, and

unless the evidence shows that he had notice of the defect, or by the exercise of ordinary care could have acquired notice, then he was not guilty of contributory negligence. Both questions were for the jury and they have passed upon them.

The objection urged against instruction No. 9 is that it leaves to the jury the question as to whether the guy wire was properly constructed. As heretofore pointed out, there was a conflict of evidence on this question. This being true, there is no merit in this assignment of error.

The next assignment of error relates to the refusal of the court to grant instructions C-1 and C-2. These instructions tell the jury that if they believe from the evidence that the horse was injured by coming in contact with the guy wire by reason of its high-strung and wild nature, or due to the fact that it struck the wire in a sweeping gallop, then the plaintiff cannot recover.

Plaintiff objected to the giving of these instructions on the ground that there was no evidence on which to base them. This, as disclosed by the record, was a valid objection.

The next assignment of error challenges the action of the court in refusing to give the following instruction:

"The Court instructs the jury that if they believe from all the evidence in this case that the plaintiff's horse was injured by a mere accident, which, by the exercise of ordinary care and reasonable foresight, could not have been foreseen, on the part of the defendant, they must find a verdict for the defendant; and this is true although the jury may believe that the plaintiff was also free from fault."

The court did, however, give the instruction with these words added: "But an occurrence to which human negligence proximately contributes is not in law an accident."

The objection to this addition urged in the trial court was:

"Counsel for the defendant objected to this addition to the instruction and assigned as a reason for said objection, that the testimony in this case shows that the accident in question was unavoidable and could not have been foreseen by ordinary care

and is properly designated as what, in law, is known as a 'mere accident,' and the defendant contends that said instruction should have been given as asked."

The objection urged in this court is:

"Counsel for the defendant objected to the addition of the words last quoted on the ground that this additional language, in the opinion of counsel for the defendant, destroyed entirely the effect of the instruction."

Under Rule XXII of the court the objection now urged will not be considered.

The objection urged in the trial court is without merit, for the reason that there is no evidence that the accident was unavoidable.

The last assignment of error to be considered relates to the question of damages.

Defendant contends the damages are excessive. Several witnesses for the plaintiff valued the horse at $2,500 before the accident and at $100 after the accident. No witness for the defendant claimed that the horse could be used as a hunter or racer after the accident. That the horse was valueless for such purposes is, we think, conclusively shown. In view of the evidence that plaintiff purchased the horse for $800 and was put to expense in training him and paying doctors' bills, we are unable to say the damages are excessive.

There are other assignments of error, but in our opinion they are without merit.

The judgment of the circuit court will be affirmed.

*Affirmed.*