Richmond

## WEST ALEXANDRIA PROPERTIES, INC.

### v.

## FIRST VIRGINIA MORTGAGE AND REAL ESTATE INVESTMENT TRUST

June 6, 1980.

Record No. 781224.

Present: Carrico, Harrison, Cochran, Poff, Compton and Thompson, JJ.

*Richard F. Williamson* (*W. Curtis Sewell; Thomas & Sewell, P.C.*, on briefs), for appellant.

*David C. Canfield* (*John H. Ariail, Jr.; Tolbert, Smith, Fitzgerald & Ramsey,* on brief), for appellee.

POFF, J., delivered the opinion of the Court.

West Alexandria Properties, Inc. (WAPI), appeals from a decree entered June 1, 1978 sustaining a demurrer to an amended bill of complaint to enforce a mechanic's lien against land owned by First Virginia Mortgage and Real Estate Investment Trust (FVM). The major issues presented are (1) whether WAPI is a "person" entitled to claim a mechanic's lien and (2) whether, when land has been severed by dedication to the public after commencement of construction improving both the dedicated and non-dedicated land, a lien encompassing the value of work done on the public property may be enforced against the remaining private property after it has been conveyed to a new owner.

Reviewing a decree sustaining a demurrer, we consider true all facts alleged in, or reasonably inferable from, WAPI's bill of complaint. *Old Dominion Iron* v. *VEPCO,* 215 Va. 658, 660, 212 S.E.2d 715, 718 (1975).

On July 9, 1973, WAPI and Landmark Palace Associates (LPA) entered into an agreement in order "to maximize the uses permitted on [their adjoining properties], to comply with certain requirements of the City of Alexandria and . . . to undertake . . . mutually advantageous cost-sharing and other cooperative arrangements". The agreement called for the parties to relocate their common boundary and then "jointly cause to be constructed" along the relocated boundary an 80-foot street, "an enclosed storm sewer trunk line", and a relocated sanitary sewer. Construction of the street and these facilities and dedication to the city were conditions precedent to the city's approval of site plans for development of multi-family dwellings.

The parties agreed to share equally all costs of construction. They were to be "jointly responsible" for "letting" engineering and construction contracts, and all plans and contracts had to be approved by both WAPI and LPA. "For the purpose of administering and implementing contracts", WAPI was named "Project Manager." The agreement provided for all invoices from "subcontractors" to be submitted to and to be paid by WAPI. WAPI, in turn, was to deliver copies of invoices, with evidence of payment, to LPA which would pay WAPI half the amounts expended.

Construction began in July 1973 and continued through August 1975. Allegedly acting as "general contractor", WAPI "furnished all materials, labor and supervision" for grading land, constructing the storm sewer trunk and branches, relocating and constructing the sanitary sewer line, constructing a water line, and temporarily relocating an electrical distribution line. Laterals and "stubs" from the mains extended onto the property LPA retained after the parties dedicated land for the street. Dedication occurred while construction was in progress.

In March 1975, LPA conveyed the remainder of its land, comprised of two parcels abutting the street, to FVM, the secured lender under existing deeds of trust on the parcels. WAPI, with FVM's knowledge, "continued to furnish materials, perform labor, and pay subcontractors to improve" FVM's land.

Between April 14 and October 9, 1975, WAPI filed several memoranda of liens against the land owned by FVM (the liened land) to secure an aggregate debt of $125,154.47 LPA owed WAPI. Of this amount, $36,123.70 was attributable to labor and materials that improved the liened land; the remainder was attributable to improvements to the dedicated land.

In October 1975, WAPI filed its original bill of complaint to enforce the liens. That bill did not distinguish the cost of improvements to FVM's land' from the cost of improvements to the dedicated land. The court sustained FVM's demurrer to this bill on the grounds that, assuming all the improvements were "structures" within the contemplation of Code § 43-3, the structures were not "annexed to" the liened land and that this land was not "necessary for the convenient use and enjoyment" of the structures within the meaning of that statute.

WAPI subsequently filed the amended bill, the sufficiency of which is in issue here. Two bases of FVM's demurrer were sustained. First, the court held that WAPI was not a person entitled to a lien. Ruling that WAPI and LPA had been joint venturers, the court stated that a joint venturer does not meet the definition of "general contractor" contained in Code § 54-113(2). For this reason, the court concluded that WAPI could not be a "general contractor" for purposes of the mechanic's lien provisions of Title 43. Second, the court reaffirmed its earlier ruling that FVM's land was not "necessary for the convenient use and enjoyment" of improvements to the dedicated land. However, the court rejected, *inter alia,* FVM's allegation that "[a]ny labor performed or materials furnished . . . were not for a . . . 'structure permanently annexed to the freehold' ". Having sustained the demurrer, the

court declared the lien invalid in its entirety and dismissed the amended bill.

On appeal, WAPI initially contends the court erred in concluding from the face of the amended bill that WAPI and LPA had been joint venturers. WAPI advances two arguments. Asserting that the agreement did not contemplate a "profit", WAPI argues that a joint venture cannot exist absent a profit motive. *But see Jackson Company* v. *City of Norfolk,* 197 Va. 62, 67, 87 S.E.2d 781, 784 (1955). And, argues WAPI, the anticipated gain in a joint venture must accrue jointly, rather than severally as WAPI claims the benefits accrued in this case.

These arguments are not properly before us. Rule 5:21 provides that "[e]rror will not be sustained to any ruling below unless the objection was stated with reasonable certainty". On appeal, though taking the same general position as in the trial court, an appellant may not rely on reasons which could have been but were not raised for the benefit of the lower court. *See Miller* v. *Commonwealth,* 185 Va. 17, 21, 37 S.E.2d 864, 866 (1946); *Virginia Public Service Co.* v. *Carter,* 168 Va. 171, 179-80, 190 S.E. 155, 158 (1937). Although WAPI took the position at trial, both orally and on brief, that it and LPA had not been joint venturers, WAPI did not raise the points now offered to support that position. Accordingly, we do not consider these arguments, and for purposes of this opinion, we accept the trial court's conclusion that WAPI and LPA were joint venturers.

WAPI contends that, even so, the "court erred in attributing their joint venture status to [WAPI] and [FVM]." Noting that joint ventures are created by contract, not by operation of law, *Legum Furniture* v. *Levine,* 217 Va. 782, 786, 232 S.E.2d 782, 785 (1977), WAPI argues that the court, without examining the relationship between it and FVM, improperly attributed joint venture status to them. This argument suffers from two fatal flaws. Again, WAPI presents a question not raised below; and the argument creates and attacks a straw man. The trial court did not attribute joint venture status to WAPI and FVM. The reason underlying its ruling was that WAPI was not a general contractor and, therefore, had no standing to assert a lien. Under that rationale, the identity of the landowner was inconsequential.

Assuming that WAPI and LPA were joint venturers, we turn to WAPI's contention that this status alone does not preclude it from claiming and enforcing a lien. Code § 43-3 states in part that:

"All persons performing labor or furnishing materials of the

value of fifty dollars or more, for the construction, removal, re-pair or improvement of any building or structure permanently annexed to the freehold . . . shall have a lien, if perfected as hereinafter provided, upon such building or structure, and so much land therewith as shall be necessary for the convenient use and enjoyment thereof. . . ."

Emphasizing the term "all persons", WAPI argues that the statute does not exclude joint venturers from its protection. If any person, says WAPI, performs labor or furnishes materials under the conditions prescribed in § 43-3, that person is entitled to a lien. FVM, however, maintains that the reference to "all persons" in § 43-3 is modified by §§ 43-4, -7, and -9. Those statutes prescribe how "general con-tractors", "subcontractors", and persons "performing labor or fur-nishing materials for a subcontractor" can perfect the lien authorized by § 43-3. FVM argues that not "all persons", but only general con-tractors, subcontractors, and "sub-subcontractors", are entitled to claim a lien and that WAPI falls into none of these privileged classes.

The definitions ascribed to "general contractor" and "subcontractor" for purposes of the mechanic's lien laws do not restrict the meaning of "all persons" as FVM maintains they do. Cf. *Cain* v. *Rea,* 159 Va. 446, 166 S.E. 478 (1932) (architect is an eligible lienor). The ap-plicable definition of "general contractor" is that provided by Code § 43-1.[1] That statute defines the term to "include contractors, laborers, mechanics and persons furnishing materials, who contract directly with the owner". A person making improvements to land is deemed a general contractor if that person is in contractual privity with the owner. Quoting § 43-1, we have held that there can be several general

---

[1] The trial court, citing *Bowen Elec. Co.* v. *Foley,* 194 Va. 92, 72 S.E.2d 388 (1952), stated that WAPI had to meet the definition of "general contractor" contained in Code § 54-113(2). Code § 54-113(2), part of the chapter providing for the licens-ing and registration of "contractors", is inapplicable here. *Foley* neither held nor im-plied that the definition in § 54-113(2) applies to persons seeking to enforce mechanic's liens. The issue in that case was whether the fact that a contractor was unlicensed and unregistered invalidated the *contract* underlying a lien. Under the law existing at that time, the contract, and hence the lien, could not be enforced. Attempting to escape this consequence, the contractor asserted that it had not bid for, contracted for, or engaged in the construction of the building against which the lien was claimed. This Court found the contractor's position untenable "since the essence of a mechanic's lien is that the complainant must have been a contractor or subcontractor and must have done work on the structure on which it claims a lien." 194 Va. at 98, 72 S.E.2d at 392. This statement does not mean that, to have a mechanic's lien, a person must be a contractor or subcontractor within the meaning of Code § 54-113(2).

contractors for one construction project. *Loan Association* v. *Kendall Company,* 205 Va. 136, 143, 135 S.E.2d 178, 183-84 (1964). For purposes of the mechanic's lien provisions of Title 43, the term "general contractor" is definitionally broader than its colloquial counterpart. *Merch'ts & Mech. Sav. Bank of Norfolk* v. *Dashiell,* 66 Va. (25 Gratt.) 616, 620-22 (1874).

■ FVM, noting that a joint venturer is his co-venturer's agent with fiduciary obligations, argues that "[t]he joint venture relationship is necessarily inconsistent with the owner-contractor relationship required by the mechanic's lien statutes." The case of *Horne* v. *Holley,* 167 Va. 234, 188 S.E. 169 (1936), upon which FVM relies, is inapposite. There, this Court held that the defendant, a joint venturer who had agreed to buy land jointly with his co-venturer, breached his fiduciary duty by acquiring the property for his sole benefit. The defendant's breach defeated the plaintiff's legitimate expectations arising from their contract. Here, WAPI has not breached any duty owed LPA; WAPI is simply attempting to invoke a remedy to insure that its contractual expectations will not be defeated.

There may be circumstances under which a joint venturer in a construction project is ineligible to claim a lien upon land owned by a co-venturer. For example, if a person agrees to provide labor and materials in exchange for a share of the profits expected to result from a construction venture, that person is not necessarily entitled to a mechanic's lien to secure payment for the labor and materials. This is so, not because such a person is a joint venturer, but because he has not contracted with the owner to be paid for the labor and materials. Instead, he has made an investment in a venture which may never result in a profit; in such case, there would be no debt and, hence, no predicate for a lien.

In the case at bar, WAPI agreed to furnish and to bear half the costs of labor and materials. But LPA promised to pay WAPI for the other half. Consequently, LPA became indebted to WAPI. If WAPI and LPA, with each promising to pay half the costs, had contracted with a stranger to furnish what WAPI furnished, the stranger would have been entitled to a lien upon LPA's land. We see no reason, legal or equitable, why WAPI, occupying the dual status of joint venturer and general contractor, may not claim a lien. Neither the statutory language, the purpose for which the statutes exist (*viz.,* to give security to those who have enhanced the value of property, *United Masonry* v. *Jefferson Mews,* 218 Va. 360, 378, 237 S.E.2d 171, 182 (1977)), nor the nature of the contractual relationship between

WAPI and LPA justifies the conclusion that WAPI is not a "person" entitled to a lien.

We are of opinion the trial court erred in ruling that a joint venturer may not be a general contractor within the compass of the mechanic's lien laws. That ruling was the trial court's only reason for sustaining the demurrer as to the portion of the lien representing work done on the liened land. Upon remand, WAPI's amended bill will be reinstated on the docket insofar as it seeks to enforce that portion.

We now consider the sufficiency of the bill as to the portion of the lien representing work done on the dedicated land.[2] Viewing the land LPA owned when construction began as one tract consisting of what became FVM's two parcels and the land LPA dedicated to the city, WAPI contends that it is entitled to enforce a joint lien against the liened land alone for half the value of all work done on the entire tract. We disagree.

In *Sergeant* v. *Denby,* 87 Va. 206, 12 S.E. 402 (1890), this Court upheld a joint lien asserted against two houses and lots separated by a street. The houses had been constructed pursuant to a lump sum contract, but the owner contended that the lienor was required to allocate the costs and to perfect two separate liens. Rejecting that contention, we held that, "as between the general contractors and the owner, the two buildings must be considered as, in effect, one piece of work". 87 Va. at 208, 12 S.E. at 402.

But where a lienor claimed a joint lien against several lots improved under a "one piece of work" contract and later released the lien on some of the lots, we held that a joint lien is enforceable against lots remaining after a release only "if there are no third persons whose interests would be injuriously affected by the release". *PIC Company* v. *First Union Bank,* 218 Va. 915, 922, 241 S.E.2d 804, 808 (1978), citing *Weaver* v. *Harland Corporation,* 176 Va. 224, 234, 10 S.E.2d 547, 551 (1940).

There is no inconsistency between the rule in *Sergeant* and the rule in *PIC* and *Weaver.* An owner of several lots subject to a lien is benefited when a lienor releases a lot, and he has no reason to complain that the full burden of the lien is shifted to his remaining lots. But

---

[2] The basis of the trial judge's ruling on this question is not clear. As we noted above, he sustained the original demurrer on·the grounds (1) that improvements to the dedicated land were not structures "annexed to" the liened land and (2) that the liened land was not "necessary for the convenient use and enjoyment" of those improvements as provided in § 43-3. But, while he sustained the second demurrer on the latter ground, he rejected the former which was expressly assigned by FVM. The ambiguity does not, however, affect resolution of the issue we now consider.

when third parties have interests in the remaining lots, such a shift would injure those interests by encumbering those lots with liability for a disproportionate share of the debt claimed in the memorandum of lien.

Analogizing the dedication of land in this case to the releases in *PIC* and *Weaver,* WAPI contends that the liened land is properly encumbered with liability for half the costs of all improvements, including those to the dedicated land. Yet, the latter costs account for a major portion of WAPI's claim. It is plain, therefore, that FVM, which was never in contractual privity with WAPI, is a third party whose fee simple interest in the land remaining after the dedication would be injured by enforcement of the lien.

We hold that FVM's interest as current owner of the liened land is protected by the rule in *PIC* and *Weaver* and that enforcement of WAPI's lien will be limited to the value of the work done on the liened land.[3] The decree will be affirmed in part and reversed in part, and the cause will be remanded for further proceedings in accord with this opinion.

*Affirmed in part,*
*reversed in part,*
*and remanded.*

---

[3] While this appeal was pending, the General Assembly amended Code § 43-3, Acts 1979, c. 360, by adding the following subsection:

"(b) Any person providing labor or materials for the installation of streets, sanitary sewers or water lines for the purpose of providing access or service to the individual lots in a development shall have a lien on each individual lot in the development for that fractional part of the total cost of such labor or materials as is obtained by using 'one' as the numerator and the number of lots as the denominator; provided, however, no such lien shall be valid as to any lot unless the person providing such labor or materials shall, prior to the sale of such lot, file with the clerk of the circuit court of the jurisdiction in which such land lies a document setting forth a full disclosure of the nature of the lien to be claimed, the amount claimed against each lot and a description of the development, and shall, thereafter, comply with all other applicable provisions of this chapter.

"Nothing contained herein shall be construed to prevent the filing of a mechanic's lien under the provisions of paragraph (a) hereof."

We express no opinion whether this amendment reflects any legislative intent regarding the availability of a lien under circumstances such as those in this case.