258

## CIRCUIT COURT OF SPOTSYLVANIA COUNTY

Lanier, Inc.

v.

Robert D. Pagan et al.

March 30, 1998

Case No. CL98-007

BY JUDGE WILLIAM H. LEDBETTER, JR.

The basic issue in this case, raised by demurrer, is whether the writing relied upon by the plaintiff is a valid and enforceable contract.

*Facts*

A demurrer admits the truth of all factual matters well pleaded and all reasonable inferences fairly attributable to the allegations. Virginia Code § 8.01-273; *West Alexandria Properties v. First Va. Mortgage*, 221 Va. 134 (1980). Therefore, the facts recited in this opinion are taken from the plaintiff's pleading.

Lanier is a general contractor. The Pagans own 5.3 acres, with improvements, in Spotsylvania County.

In the fall of 1996, Lanier presented a written proposal to the Pagans for remodeling a farmhouse on their property. The proposal was accepted on December 5, 1996.

Lanier began work on the remodeling project and in the process spent about $18,000.00 for labor and material, thereby advancing that sum until the Pagans could obtain construction loan financing.

On July 25, 1997, the Pagans obtained a $315,000.00 construction loan.

A few weeks later, the Pagans "ordered [Lanier] off the job." Thereafter, the Pagans hired employees or former employees of Lanier to do the work.

Lanier recorded two mechanic's liens against the property and instituted this suit on January 5, 1998. The suit contains four counts. The Pagans have demurred to all counts. Counsel agreed to argue the demurrer by memoranda. Those memoranda have been received and reviewed, and this opinion addresses the issues raised by the demurrer.

### Demurrer to Count I:
### Enforcement of the Mechanic's Liens

The Pagans contend that the mechanic's liens are invalid and cannot be enforced because they are not for labor and materials furnished by Lanier to the property. Instead, they say, it is apparent from Lanier's pleading that the basis of the liens is damages for work *not* performed by Lanier, but by others, as a result of the Pagans' alleged breach of the contract.

In response, Lanier states in its memorandum that it will "voluntarily remove" its mechanic's liens from the land records and will "withdraw" Count I.

Therefore, this claim is now moot. Count I will be nonsuited. The construction lender and the trustees under the construction loan deed of trust, who were joined as defendants for this aspect of the case, will be dismissed.

Count I is the only equitable claim in Lanier's pleading. Since that claim will be removed from the case by nonsuit, the case will be transferred to the law side of the court for further proceedings pursuant to Virginia Code § 8.01-270.

### Demurrer to Count II: Contract

The Pagans contend that the writing that is the basis for Lanier's Count II claim is not a valid and enforceable contract.

In order to resolve this issue, the court must examine the writing. The writing is attached to Lanier's pleading as an exhibit; hence, it is a part of that pleading. Rule 1:4(i).

The writing is labeled "Proposal." It is on a form furnished by Lanier. In it, Lanier proposes to perform work on the Pagans' property, as follows:

[t]o furnish the materials and perform the labor necessary for the completion of remodeling of farmhouse. Work to be performed at the

residence of David [sic] Pagan for a fee of 20% over the cost of material and labor. This is a time and material job. Contractor to submit bills first of each month. All material is guaranteed to be as specified, and the above work to be performed in accordance with the drawings and specifications submitted for above work and completed in a substantial workmanlike manner for the sum of time and material job with payments to be made as follows: 1st of each month.

The proposal is dated November 11, 1996. It was accepted by Robert D. Pagan on December 5, 1996.

There are no specifications or drawings.

The fundamentals of a binding and enforceable contract are well known. One of the elements is completeness and reasonable certainty. *Completeness* denotes that the contract embraces all the material terms. *Certainty* denotes that each of those terms is expressed in a sufficiently exact and definite manner. *See* 4B M.J., *Contracts*, § 27. An *incomplete contract* is one from which material terms have been entirely omitted. An *uncertain contract* is one which may contain all the material terms but they are expressed in inexact, ambiguous, or obscure language such that the intent of the parties cannot be ascertained. *Smith v. Farrell*, 199 Va. 121 (1957). Where a contract is to some extent uncertain or indefinite, the ambiguity may be explained in the light of surrounding circumstances, and the contract will be enforced.

This case does not involve an uncertain contract. It involves an *incomplete contract.*

Absolutely nothing in the proposal describes the nature and extent of services to be performed, materials to be furnished, or type of construction to be done by Lanier. Any determination of whether Lanier performed in accordance with the parties' agreement would be based solely on speculation and conjecture.

A contract for services must contain some reasonably definite description of the nature of services that are to be performed. *Mullins v. Mingo Lime Co.*, 176 Va. 44 (1940). A building contract is governed by the same principles. *See* 3A M.J., *Building Contracts*, § 2.

The oblique reference to "remodeling of farmhouse" does not cure the incompleteness. "Remodel" means to make over or rebuild. Standing alone, it indicates only that Lanier was to do some type of construction work on the Pagans' farmhouse. This is not the sort of uncertainty that can be explained by surrounding circumstances, nor is it a mere ambiguity that can be explained by parol evidence. As noted above, a building contract must embrace some

reasonable description of the work to be done so that the rights and obligations of the parties can be determined. Otherwise, an essential term is missing and the contract cannot be enforced. This is such a case.

Lanier argues that the missing term can be "developed" at trial. It cites *High Knob v. Allen*, 205 Va. 503 (1964). Lanier's reliance on the case is misplaced. There, the parties' written contract dealt with a subject (sale of lots in a subdivision) different from the one in dispute (connecting to a water system). Therefore, the Court held, it was reasonable to assume that the parties had dealt with the other subject in collateral oral agreements, as the plaintiff asserted. Under those circumstances, parol evidence was admissible to prove the collateral agreements. Here, Lanier sues on the writing, making no mention of any collateral oral agreement(s) as the basis of his claim. If his intention now is to assert that oral agreements embrace the parties' agreement as to the nature of work Lanier was to perform, it is difficult to understand how such oral agreements would meet the definition of an "independent, collateral agreement" as that term is used in the context of the parol evidence rule. Where parol evidence is permitted to furnish the terms of a writing that is not complete, evidence will be heard only as to additional terms not inconsistent with or contrary to the writing *and* only as to terms *independent of* and in addition to the written terms. *See* Friend, *Law of Evidence in Virginia*, § 20-3 (4th ed. 1993). If Lanier's interpretation of the parol evidence rule were accepted, no contract would be void for incompleteness. That rule would be extinct because every missing or incomplete term in a writing could be supplied by parol evidence at trial.

For the reasons explained, the court is of the opinion that the contract upon which Lanier bases his Count II claim is unenforceable. Accordingly, the Pagans' demurrer will be sustained as to the contract claim.

### Count III: Tortious Interference

In Count III, Lanier alleges that it had valid contractual employment relationships with David A. Lanier, Dean Maready, and Jerry McIntosh, and that the Pagans tortiously interfered with those relationships by inducing those employees to terminate their employment with Lanier and to perform the remodeling work directly for the Pagans.

The Pagans' demurrer states that Count III does not set forth a cause of action because "when a contract is terminable at will, a plaintiff, in order to present a prima facie case of tortious interference, must allege and prove not

only an intentional interference that caused the termination of the at will contract but also that the defendant employed "improper means."

The Pagans' recitation is a correct statement of the law. However, as Lanier points out, it is based on a false premise, *viz.*, that Lanier's contractual relationships with the three employees were at will. Nothing in Lanier's pleading suggests that those employment contracts were at will. Thus, there was no need for Lanier to plead that the Pagans' interference with those contracts was accomplished by "improper means."

Accordingly, the demurrer to Count III will be overruled.

### Count IV: Tortious Interference

In Count IV, Lanier seeks damages against David A. Lanier, Dean Maready, and Jerry McIntosh for *their* interference with Lanier's building contract with the Pagans. Nevertheless, the Pagans demur for the same reason they demur to Count III.

The court agrees with Lanier that the Pagans do not have standing to challenge the sufficiency of a claim that does not seek relief against them and involves only other defendants.

Therefore, the demurrer to Count IV will be overruled.

### Conclusion

Mr. Pugh will please prepare an order permitting Lanier to suffer nonsuit as to Count I, directing Lanier to cause the mechanic's liens to be released, transferring this case to the law side of the court for further proceedings, sustaining the demurrer as to Count II, and overruling the demurrer as to Counts III and IV.