COURT OF APPEALS OF VIRGINIA

Present: Judges Malveaux, Friedman and Lorish

EDWARD GONZALO MEDRANO, JR.

v.      Record No. 1231-23-4

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION*
PER CURIAM
SEPTEMBER 24, 2024

FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
Louise M. DiMatteo, Judge

(Mark S. Thrash, on brief), for appellant.

(Jason S. Miyares, Attorney General; Kimberly A. Hackbarth, Senior
Assistant Attorney General, on brief), for appellee.


After a probation revocation hearing, the trial court revoked each of the 12-year

suspended sentences of Edward Gonzalo Medrano, Jr. ("appellant") for his 4 grand larceny

convictions and 6 burglary convictions. As to each conviction, the trial court imposed an active

sentence of 2 years with sentences to run concurrently, resuspended the balance of each sentence,

and placed appellant on supervised probation for 20 years. On appeal, appellant asserts that the

trial court: (1) abused its discretion in finding that he had notice of the conditions of his probation

and that he willfully violated those conditions and (2) erred in suspending the balance of his

sentences and extending his probation for an additional 20 years, when it no longer had jurisdiction

over him. After examining the briefs and record in this case, the panel unanimously holds that oral

argument is unnecessary because "the appeal is wholly without merit." Code § 17.1-403(ii)(a);

Rule 5A:27(a). Accordingly, we affirm the trial court's judgment.

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

## I. BACKGROUND

"On appeal, '[w]e "view the evidence received at [a] revocation hearing in the light most favorable to the Commonwealth, as the prevailing party, including all reasonable and legitimate inferences that may properly be drawn from it."'" *Green v. Commonwealth*, 75 Va. App. 69, 76 (2022) (alterations in original) (quoting *Johnson v. Commonwealth*, 296 Va. 266, 274 (2018)).

### A. Sentencing, Imprisonment, and Deportation

In May 2003, appellant pleaded guilty to indictments charging four counts of grand larceny, in violation of Code § 18.2-95, and six counts of burglary, in violation of Code § 18.2-91. As to each charge, the court imposed a 20-year term of incarceration, with 12 years suspended for 10 years. The sentences were to run concurrently. The court ordered that appellant pay restitution, be placed on supervised probation for ten years after his release, and comply with all rules and requirements set by his probation officer, including substance abuse counseling and/or testing. The sentencing orders were entered in September 2003.

In April or May 2010, appellant was released from incarceration and immediately taken into custody by federal authorities due to an outstanding detainer for deportation. On or about June 30, 2010, appellant was deported to Nicaragua. As a result, appellant never began probation or participated in substance abuse counseling or testing. He also never paid restitution.

### B. Reentry and Extradition

In April 2021, appellant was arrested for illegally reentering the United States after having been deported. He was prosecuted in federal court, convicted, and sentenced to 18 months in federal prison. After serving this sentence, appellant was extradited to Arlington County and served with a bench warrant charging him with violating probation by being deported, as well as a show cause rule alleging that he had failed to pay restitution. The sheriff had unsuccessfully attempted to serve the rule upon appellant at his last known address in April 2015.

C.  Revocation Proceedings

At a probation revocation hearing on January 13, 2023, the court heard argument on allegations that appellant violated the conditions of his probation by: (1) failing to pay restitution, and (2) committing the federal criminal offense of illegally reentering the United States after being deported.

As to the first allegation, appellant admitted he had not paid restitution but insisted his failure was not willful.  He contended that, because he had immediately been deported after his release from incarceration, he had lacked the opportunity to meet with his probation officer to "be reminded of the need to make restitution."  As defense counsel explained, "[appellant] simply didn't recall that he had to make it."  The trial court did not accept this explanation, noting that appellant "knew that he had to pay" because the sentencing orders "clearly ordered" restitution.  The court thus found appellant's failure to pay restitution was a willful violation of probation.

As to the federal conviction, appellant argued that the trial court "did not have jurisdiction over this event for purposes of a probation violation" under Code § 19.2-306, because the federal offense occurred in April 2021, a year after his ten-year period of probation and suspension had expired.  The court ordered briefing by the parties and continued the matter.

At the resumed hearing, the court considered three possible bases for finding a probation violation by appellant: (1) failure to report to probation upon release from incarceration; (2) failure to pay restitution; and (3) commission of the federal criminal offense of illegally reentering the United States after being deported.

Appellant testified that, during his period of incarceration for the Virginia offenses, he never received any written or verbal communications from the probation office reminding him of his restitution obligation.  He admitted being present at his sentencing hearing, but stated he did not recall the judge making any statement about restitution.  He further testified that, when he was

released from incarceration in 2010, he was immediately taken into federal custody. When given the choice between fighting deportation or waiving a deportation proceeding and being deported, he chose the latter option.

On the third issue, appellant asserted that his federal conviction "took place . . . outside of the ten-year period mandated by statute," and thus the trial court "had no subject matter jurisdiction to . . . punish [him] for that crime is [sic] a violation of probation." Ultimately the trial court agreed with appellant, finding his federal offense of illegally reentering the United States occurred "outside the [ten-year] timeframe" during which that crime could be regarded as a probation violation.

Regarding the first issue, however, the trial court found that appellant failed to contact the probation department as he was required to do, even though there was "nothing preventing him from picking up the phone and explaining where he is and what happened." The court found "that he was not in contact. And that is, on some level, an absconding in that respect." The court also highlighted that appellant had opted to "relinquish[] his residency" when he "could have fought" to stay in the United States.

With respect to the second issue, defense counsel conceded appellant had not paid restitution. Still, he argued appellant had "no basis for knowing" he was required to pay restitution, characterizing this argument as one of "mitigation" and "fairness." The court disagreed, stating it was "not going to find that he didn't have notice; he did" by way of the court's sentencing orders as well as the show cause rule. Though defense counsel argued that the bench warrant and the rule were not served on appellant until after he had been extradited to Arlington County, the trial court found that sufficient "process was instituted by the [c]ourt in the manner contemplated in the Code." Respecting appellant's testimony, the trial court stated: "I understand his testimony, I just don't believe all of it. And I don't find it as weighty as [defense counsel] would like me to." The court also found there was no evidence appellant had complied

with the other special conditions, including paying court costs and submitting to a substance abuse evaluation.

Accordingly, the trial court found appellant to be in violation "on a number of points" and convicted appellant of 20 counts of violating probation, 2 for each of the original charges. For each conviction, the trial court revoked the 12-year suspended sentence, imposed a 2-year active sentence, and resuspended the balance for 20 years. The sentences were to run concurrently. It also extended appellant's supervised probation for 20 years on the same terms and conditions. The probation violation orders were entered in April 2023.

Defense counsel objected to the extension of appellant's probation because "probation cannot be extended once the [c]ourt has lost subject matter jurisdiction." Counsel noted he was "not saying Your Honor doesn't have jurisdiction to have him before the [c]ourt today for – because process was issued within three years of the end of his probation," but that "probation cannot be extended once the [c]ourt has lost subject matter jurisdiction." When the court insisted that it "didn't lose subject matter jurisdiction," counsel replied, "[t]hat's where we differ."

This appeal followed.

## II. ANALYSIS

### A. Notice and Violation of Probation

Appellant argues the trial court abused its discretion in finding that he had notice of the conditions of his probation and willfully violated those conditions.

"The 'revocation of a suspended sentence lies in the discretion of the trial court and that . . . discretion is quite broad.'" *Clarke v. Commonwealth*, 60 Va. App. 190, 195 (2012) (alteration in original) (quoting *Peyton v. Commonwealth*, 268 Va. 503, 508 (2004)). "On appeal from a revocation proceeding, the trial court's 'findings of fact and judgment will not be reversed unless

- 5 -

there is a clear showing of abuse of discretion.'" *Id.* (quoting *Keselica v. Commonwealth*, 34 Va. App. 31, 35 (2000)).

As our Supreme Court has recognized, there are

> "three principal ways" by which a court abuses its discretion: "when a relevant factor that should have been given significant weight is not considered; when an irrelevant or improper factor is considered and given significant weight; and when all proper factors, and no improper ones, are considered, but the court, in weighing those factors, commits a clear error of judgment."

*Lawlor v. Commonwealth*, 285 Va. 187, 213 (2013) (quoting *Landrum v. Chippenham & Johnston-Willis Hosps., Inc.*, 282 Va. 346, 352 (2011)). "In evaluating whether a trial court abused its discretion, . . . 'we do not substitute our judgment for that of the trial court. Rather, we consider only whether the record fairly supports the trial court's action.'" *Grattan v. Commonwealth*, 278 Va. 602, 620 (2009) (quoting *Beck v. Commonwealth*, 253 Va. 373, 385 (1997)). "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." *Thomas v. Commonwealth*, 44 Va. App. 741, 753, *adopted upon reh'g en banc*, 45 Va. App. 811 (2005). "[T]he abuse of discretion standard requires a reviewing court to show enough deference to a primary decisionmaker's judgment that the [reviewing] court does not reverse merely because it would have come to a different result in the first instance." *Commonwealth v. Thomas*, 73 Va. App. 121, 127 (2021) (alterations in original) (quoting *Lawlor*, 285 Va. at 212). But "by definition, a trial court 'abuses its discretion when it makes an error of law.'" *Khine v. Commonwealth*, 75 Va. App. 435, 444 (2022) (quoting *Porter v. Commonwealth*, 276 Va. 203, 260 (2008)).

After suspending a sentence, a trial court "may revoke the suspension of sentence for any cause the court deems sufficient that occurred at any time within the probation period, or within the period of suspension fixed by the court." Code § 19.2-306(A). "If the court, after hearing, finds good cause to believe that the defendant has violated the terms of suspension, then the court may revoke the suspension and impose a sentence in accordance with the provisions of [Code]

- 6 -

§ 19.2-306.1." Code § 19.2-306(C). Further, if the court "finds that a defendant has absconded from the jurisdiction of the court, the court may extend the period of probation or suspended sentence for a period not to exceed the length of time that such defendant absconded." *Id.*

Appellant contends he did not have notice of his restitution obligation, because "no probation officer existed to remind" him of that obligation upon his release from incarceration. The only authority appellant cites in support of his contention that he was owed a reminder is Code § 19.2-305.1(F)(2) and (F)(3). These code sections, under certain circumstances, require the court to schedule hearings for the purpose of reviewing a defendant's compliance with a restitution order. But neither code section is applicable here.

Code § 19.2-305.1(F)(2) applies to "any case in which the court orders the defendant to pay restitution and places the defendant on probation that does not include a period of active supervision." But here, the trial court originally sentenced appellant to ten years of *supervised* probation upon his release. Appellant likens his case to those contemplated by subsection (F)(2) because, since he never began probation, he never had a probation officer supervising him—i.e., he was situated much like a defendant placed on unsupervised probation. This argument fails, because the reason for the probation officer's absence in appellant's case is distinguishable from the reason contemplated by the statute. Under subsection (F)(2), the lack of supervision is intended by the court and contemplated in its order. Here, the court intended and ordered that appellant participate in supervised probation, and the lack of supervision arose from appellant's failure to ever begin probation or contact the probation department. Thus, subsection (F)(2) does not govern appellant's case.

Code § 19.2-305.1(F)(3) requires the trial court to schedule compliance hearings "[i]f any amount of restitution remains unsatisfied at the time of a hearing conducted pursuant to [Code § 19.2-305.1(F) subsection] 1 or 2." No such hearing occurred, or should have occurred, in this

case. Subsection (1) requires a hearing if restitution remains unsatisfied either "(i) 60 days prior to the defendant's release from supervision pursuant to the terms of the sentencing order or (ii) if the [probation] agency requests that the defendant be released from supervision, at the time the agency submits its request to the court." Here, neither romanette (i) nor (ii) applies because appellant never began supervised probation. And as previously discussed, subsection (2) provides for a hearing only when the court initially ordered probation that "does not include a period of active supervision," which is not the case here. Consequently, subsection (F)(3) also fails to support appellant's assertion that he was owed a hearing to remind him of his restitution obligation.

We conclude the record supports the trial court's ruling that appellant violated probation "on several points." Appellant conceded he had not paid restitution and styled his argument only as one of "mitigation" and "fairness." He did not offer any evidence he had complied with the other special conditions in the court's order by paying court costs or completing a substance abuse evaluation. And his own argument that he could not contact the probation office supports the trial court's finding that he did not do so.[1] Thus, the trial court's ruling that appellant violated the terms of his probation "on several points" was not an abuse of discretion.

The trial court also did not abuse its discretion in finding appellant had notice of his restitution obligation and, as a result, his failure to pay restitution was willful. Appellant was present at the sentencing hearing, and the court's sentencing orders "clearly ordered" restitution, as well as the other special conditions. And as for appellant's testimony that he did not recall the sentencing judge mentioning restitution, the trial court was entitled to disbelieve it, and to afford it less weight in light of other factors. *Kelley v. Commonwealth*, 69 Va. App. 617, 626 (2019)

---

[1] Appellant has not challenged the related finding that his failure to contact the probation office constituted "an absconding," which in and of itself provides sufficient justification for the trial court to extend the period of probation or suspended sentences under Code § 19.2-306(C).

("'The fact finder, who has the opportunity to see and hear the witnesses, has the sole responsibility to determine their credibility' as well as 'the weight to be given their testimony.'" (quoting *Hamilton v. Commonwealth*, 279 Va. 94, 105 (2010))); *Perkins v. Commonwealth*, 31 Va. App. 326, 331 (2000) ("The fact finder, who determines the credibility of the witnesses and the weight accorded their testimony, may accept or reject the testimony in whole or in part."). Finally, the court found it significant that appellant could have fought to stay in the United States, where he presumably could have begun supervised probation and "be[en] reminded" of the restitution obligation, but chose to accept deportation. All these factors, which the trial court properly weighed, support the trial court's conclusion that the violations were willful.

Appellant also challenges the trial court's conclusion that he could have informed the probation office about his deportation, arguing that this conclusion "ignores the reality" of his being imprisoned at 17 years of age, serving 8 years, then being deported immediately. But this argument does not relate to the issue raised in his assignment of error. *See Moison v. Commonwealth*, 302 Va. 417, 420 (2023) ("[T]he purpose of assignments of error is to point out the errors with reasonable certainty in order to direct [the] court and opposing counsel to the points on which appellant intends to ask a reversal of the judgment, and to limit discussion to these points." (second alteration in original) (quoting *Yeatts v. Murray*, 249 Va. 285, 290 (1995))). Instead of addressing why the trial court abused its discretion in finding that appellant had notice of the conditions of his probation and willfully violated those conditions, this argument speaks to the trial court's conclusion that appellant himself could have notified probation of his deportation. Additionally, appellant cites no legal authority in support of this argument.[2] Because this argument is

---

[2] An appellant's opening brief must include "[t]he standard of review and the argument (*including principles of law and authorities*) relating to each assignment of error." Rule 5A:20(e) (emphasis added). "Unsupported assertions of error 'do not merit appellate consideration.'" *Bartley v. Commonwealth*, 67 Va. App. 740, 744 (2017) (quoting *Jones v. Commonwealth*, 51 Va. App. 730, 734 (2008)). "Furthermore, 'when a party's "failure to strictly

unsupported and does not relate to his assignment of error, we cannot consider it. *Id.* (noting that the assignment of error "cabins the error" an appellate court can consider).

## B. Jurisdiction

Appellant also argues the trial court erred by resuspending the balance of his sentences and extending his probation for 20 years because the court "no longer had jurisdiction over" him.[3]

"Subject matter jurisdiction 'refers to a court's power to adjudicate a class of cases or controversies[.]'" *Riddick v. Commonwealth*, 72 Va. App. 132, 141 (2020) (alteration in original) (quoting *Cilwa v. Commonwealth*, 298 Va. 259, 266 (2019)). "Subject matter jurisdiction 'can only be acquired by virtue of the Constitution or of some statute. Neither the consent of the parties, nor waiver, nor acquiescence can confer' subject matter jurisdiction." *Id.* (quoting *Pure Presbyterian Church of Wash. v. Grace of God Presbyterian Church*, 296 Va. 42, 49 (2018)). "The lack of subject matter jurisdiction can be initially raised at any point during the proceedings, including on appeal." *Pure Presbyterian*, 296 Va. at 50.

"In contrast to subject matter jurisdiction, 'active jurisdiction' — pragmatically called the 'jurisdiction to err' — involves not the power of the court but the proper exercise of its authority consistent with 'settled principles of the unwritten law' or any applicable 'mandate of the statute law.'" *Cilwa*, 298 Va. at 266 (quoting *Farant Inv. Corp. v. Francis*, 138 Va. 417, 427, 436 (1924)).

---

adhere to the requirements of Rule 5A:20(e)" is significant,' this Court may treat the question as waived." *Id.* (quoting *Parks v. Parks*, 52 Va. App. 663, 664 (2008)). Appellant's failure to cite any authority in support of this argument is significant, because this argument constitutes the bulk of the briefing under his first assignment of error.

[3] Appellant contends he preserved this issue for appellate review when he objected to the trial court that it had "lost subject matter jurisdiction." But the substance of his jurisdictional argument to the trial court, and on brief to this Court, is focused on "active jurisdiction," which is an entirely separate legal concept. *Hunter v. Commonwealth*, 56 Va. App. 582, 589 n.7 (2010) ("Jurisdiction is a term which can engender much confusion because it encompasses a variety of separate and distinct legal concepts." (quoting *Mohamed v. Commonwealth*, 56 Va. App. 95, 98 (2010))). We conclude that, although appellant blurs the lines between these concepts, his assignment of error addresses both subject matter and active jurisdiction.

"The authority to exercise jurisdiction is commonly described as those 'conditions of fact [that] must exist which are demanded by the unwritten or statute law as the prerequisites of the authority of the court to proceed to judgment or decree.'" *Mohamed v. Commonwealth*, 56 Va. App. 95, 101 (2010) (alteration in original) (quoting *Porter*, 276 Va. at 228). As such, "[w]hile the authority to exercise jurisdiction is a type of jurisdiction, it is distinct from subject matter jurisdiction." *Id.* Unlike subject matter jurisdiction, active jurisdiction can be waived. *Riddick*, 72 Va. App. at 143 (noting that "a claim that a court lacks active jurisdiction cannot be raised for the first time on appeal and is subject to the contemporaneous objection rule").

To the extent that appellant's argument on brief addresses subject matter jurisdiction, it is clear and unambiguous that the trial court had subject matter jurisdiction over the revocation proceedings under Code § 17.1-513, which gives the circuit courts "original jurisdiction of all indictments for felonies and of presentments, informations and indictments for misdemeanors." "Moreover, proceedings for the revocation of probation are part of the criminal process entrusted to the circuit courts by the General Assembly." *Mohamed*, 56 Va. App. at 100 (holding that, "[w]ithout question," the trial court had subject matter jurisdiction over a revocation proceeding because it had "the requisite 'potential jurisdiction[] to consider' any matter related to the criminal process as set forth in Code § 17.1-513" (second alteration in original) (quoting *Ghameshlouy v. Commonwealth*, 279 Va. 379, 389 (2010))). Appellant's probation revocation proceedings belong in the "class of cases or controversies" that Code § 17.1-513 empowers the trial court to adjudicate. *Riddick*, 72 Va. App. at 141 (quoting *Cilwa*, 298 Va. at 266).

To the extent that appellant's argument on brief addresses active jurisdiction, we find it significant that he told the trial court he was "not saying Your Honor doesn't have jurisdiction to have him before the [c]ourt today – because process was issued within three years of the end of his probation" in the manner contemplated by Code § 19.2-306(B). "While concessions of law are not

binding on an appellate court, we may accept concessions of fact." *Williams v. Commonwealth*, 71 Va. App. 462, 488 n.9 (2020). We accept appellant's factual concession that process was issued in the form of the rule to show cause in April 2015. And appellant does not challenge the trial court's finding that such notice was legally sufficient. *See* Rule 5A:20(c)(1) ("Only assignments of error listed in the [opening] brief will be noticed by this Court."); *see also Simmons v. Commonwealth*, 63 Va. App. 69, 75 n.4 (2014) (noting that the Rules "require us to hold that [an] issue is waived because it was not part of appellant's assignment of error").

Code § 19.2-306(A) provides: "in any case in which the court has suspended the execution or imposition of sentence, the court may revoke the suspension of sentence for any cause the court deems sufficient that occurred at any time within the probation period, or within the period of suspension fixed by the court." Below, appellant argued the trial court lacked jurisdiction to find him in violation of probation based on his federal conviction, which occurred in April 2021, "outside of the ten-year period" of probation and suspension originally fixed by the trial court. The trial court agreed, finding the federal conviction occurred "outside the [ten-year] timeframe" during which it could be considered a violation of probation. But appellant's argument before this Court concludes with the assertion that "the trial court extended [his] probation on March 10, 2023, almost three . . . years after the end of its active jurisdiction period over" him. This argument was not presented to the trial court. *See Moison*, 302 Va. at 419 ("On appeal, though taking the same general position as in the trial court, an appellant may not rely on reasons which could have been but were not raised for the benefit of the lower court." (quoting *W. Alexandria Props., Inc. v. First Va. Mortg. & Real Est. Inv. Tr.*, 221 Va. 134, 138 (1980))). More importantly, it ignores the fact

that it is the "cause" upon which the extension of probation is based, and not the trial court's ruling extending probation, which is subject to the time restriction in Code § 19.2-306(A).[4]

Because process was issued in the manner contemplated by Code § 19.2-306, the trial court had active jurisdiction over appellant's probation revocation proceeding. And as the court recognized, because appellant's federal conviction occurred "outside the timeframe" of the original ten years of probation and suspension, it could not, and did not, find him in violation of probation on that particular basis. But the actions that actually formed the basis of this ruling—namely, appellant's failure to contact the probation department, pay restitution or court costs, or complete a substance abuse evaluation—occurred within that ten-year timeframe. Thus, the trial court did not err in resuspending the balance of appellant's sentences and extending his probation.

## III. CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.

*Affirmed.*

---

[4] We note that, under Code § 19.2-306(C), if a court finds "good cause to believe that the defendant has violated the terms of suspension," it is empowered to "revoke the suspension and impose a sentence" and to "suspend all or any part of this sentence for a period up to the statutory maximum period for which the defendant might originally have been sentenced to be imprisoned, less any time already served, and may place the defendant upon terms and conditions or probation." Here, the "statutory maximum period" for which appellant might originally have been sentenced was 20 years for each of his 4 grand larceny and 6 burglary convictions. Code §§ 18.2-91, -95. And even though they were to run concurrently, the cumulative total of all those potential maximum sentences—commencing on the date the original sentencing orders were entered in September 2003—had not yet elapsed when the trial court entered its probation violation order in April 2023. This fact distinguishes appellant's case from our recent decision in *Barrow v. Commonwealth*, 81 Va. App. 535, 554 (2024) (holding that a trial court "no longer had the authority" to order an additional period of suspension or probation upon revoking a defendant's suspended sentence, because, at the time of the court's revocation order, the ten years representing the "cumulative maximum penalty" for which the defendant could have been punished had already expired). Here, because the trial court's actions fell within the time limits provided by Code § 19.2-306(C), that section also does not affect its jurisdiction over appellant.